UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LINDA RODERIQUES, et al. | : | |
| | : | |
| vs. | : | C.A. No. 04-026 L |
| | : | |
| AMERICAN FOAM, et al. | : | |

STATE OF RHODE ISLAND
AND IRVING J. OWENS' MOTION TO DISMISS
PURSUANT TO F.R.C.P. 12(b)(6)

Defendants State of Rhode Island and Irving J. Owens hereby Move this Honorable Court to Dismiss the Complaint on file herein against them pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

DEFENDANTS

By Their Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

James R. Lee (#4305)
Assistant Attorney General
150 South Main Street
Providence, Rhode Island 02903
TEL: (401) 274-4400, Extension 2314
FAX: (401) 222-2995

62

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the 1st day of September 2004, a copy of the within was mailed, via regular mail, postage prepaid, to the certification list.

[signature]

UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LINDA RODERIQUES, et al. | : | |
| | : | |
| vs. | : | C.A. No. 04-026 L |
| | : | |
| AMERICAN FOAM, et al. | : | |

ENTRY OF APPEARANCE

I, James R. Lee, Assistant Attorney General, hereby enter my appearance for the State of Rhode Island and Irving J. Owens, Fire Marshall for the State of Rhode Island, in the above entitled case.

Defendants,
By Their Attorney,

Patrick C. Lynch
Attorney General

James R. Lee (Bar No. 4305)
Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Extension 2314
(401) 222-3016 (fax)

UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LINDA RODERIQUES, et al. | : | |
| | : | |
| vs. | : | C.A. No. 04-026 L |
| | : | |
| AMERICAN FOAM, et al. | : | |

# STATE OF RHODE ISLAND AND IRVING J. OWENS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6)

Respectfully submitted,

DEFENDANTS

By Their Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

James R. Lee (#4305)
Assistant Attorney General
150 South Main Street
Providence, Rhode Island 02903
TEL: (401) 274-4400, Ext. 2314
FAX: (401) 222-2995

UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LINDA RODERIQUES, et al. | : | |
| | : | |
| vs. | : | C.A. No. 04-026 L |
| | : | |
| AMERICAN FOAM, et al. | : | |

MEMORANDUM IN SUPPORT OF STATE OF RHODE ISLAND AND IRVING J. OWENS' MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6)

## I. Introduction

On February 20, 2003 the use of pyrotechnics by an unlicensed individual, without the knowledge or permission of the State of Rhode Island and in violation of State civil and criminal laws,[1] ignited the interior of The Station nightclub. The tragic fire that resulted from those illegal acts caused the deaths and injuries that are the basis of this action. Prior to the fire neither the State nor its Fire Marshal, Irving J. Owens, had inspected The Station, authorized the use of illegal pyrotechnics[2] or in any other way had involvement in the events that caused the fire at the nightclub. Moreover, the State of Rhode Island is a sovereign state and as such it and its official Fire Marshal are entitled to all the benefits and protections of a sovereign. As shown infra, several of those protections, as well as traditional limitations enjoyed by non-sovereigns, require that the

[1] See R.I. Gen. Laws §§ 23-28.11-3, 4 and 9.

[2] In fact, only the "local fire authority" can issue a permit to possess or display pyrotechnics. R.I.Gen. Laws § 23-28.11-3(a).

complaint on file herein be dismissed as to both the State of Rhode Island and Irving J. Owens pursuant to F.R.C.P. 12(b)(6).

The complaint acknowledges Rhode Island's[3] lack of involvement with the actual events causing the fire on February 20, 2003. Despite that, it seeks to impose liability on the State for official governmental acts such as the enactment and enforcement of codes and the funding of State agencies. (See for example ¶ 281, page 68). Regardless of whether these claims are considered as failures to appropriate funds, pass laws, inspect, train or otherwise, they seek to impose liability for sovereign acts of governance. Both Rhode Island and State Fire Marshal Owens are immune from liability for these official acts pursuant to legislation and case law and, therefore, this complaint must be dismissed as to them.[4]

## II. This Litigation is Barred by the Eleventh Amendment and the Doctrine of Sovereign Immunity

The Eleventh Amendment to the United States Constitution states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." This language neither defines nor limits Rhode Island's Constitutional immunity.

> The phrase "Eleventh Amendment Sovereignty" is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from nor is limited by the terms of the Eleventh Amendment. Rather, as the Constitution's structure, and its history, and the

[3] Hereinafter "Rhode Island" will be used to refer to both the State and its Fire Marshal unless stated otherwise.

[4] No inspections at The Station nightclub were performed by Rhode Island or Owens. West Warwick inspected and licensed the business. The State realizes that for the purpose of a Motion to Dismiss the Court must assume the factual allegations of the complaint to be true.

> authoritative interpretations by the Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today (either literally or by virtue of their admission into the Union upon an equal footing with the other States) except as altered by the plan of the Convention or certain constitutional Amendments. Alden v. Maine, 119 S.Ct. 2240, 2246 (1999).

Today it is clear that an individual cannot sue a State absent some exception to the State's Eleventh Amendment immunity.

There are only three exceptions to a state's Eleventh Amendment immunity: (1) where Congress properly abrogates the immunity; (2) where a defendant State explicitly waives its immunity by consenting to be sued in federal court; and (3) where a suit is limited to prospective injunctive relief against a state official to enjoin a continuing violation of federal law. See Bergemann v. Rhode Island, 958 F. Supp. 61, 66-67 (D.R.I. 1997) (applying Rhode Island's Eleventh Amendment immunity). None of these exceptions apply to the present action. The first exception is not at issue in this case because the substantive claims asserted are based entirely on state law and there is no congressional action abrogating sovereign immunity or otherwise speaking to whether such claims may be asserted against Rhode Island.[5] The third exception is similarly inapplicable because no injunctive relief is sought against Rhode Island or its Fire

[5] Plaintiffs cannot reasonably contend that they rely on 28 U.S.C. § 1369 as a basis of abrogation by Congress. This statute addresses the parameters of diversity jurisdiction in particular circumstances. The statute says nothing about sovereign defendants or the immunity from suit that such defendants possess.

Marshal. Consequently, the only remaining issue is whether Rhode Island has itself waived its sovereign immunity for the actions alleged.[6]

Although the State has provided a limited waiver of its sovereign immunity under R.I. Gen. Laws § 9-31-1[7], the Rhode Island Supreme Court has repeatedly held that R.I. Gen. Laws § 9-31-1 is strictly construed *against* waiver. See Andrade v. State, 448 A.2d 1293 (R.I. 1982) (successful plaintiff under § 9-31-1 not entitled to prejudgment interest because statute as strictly construed provides no such provision). Under Rhode Island case law, a number of restrictions to the waiver of immunity are applicable to this case. First, claims of the nature alleged here are barred by the public duty doctrine. Second, to the extent that claims are based on failure to enact legislation and/or to provide adequate funding, the claims are barred by the doctrine of legislative immunity as recognized by the United States Supreme Court and the Rhode Island Supreme Court. Third, as to claims against Owens as Fire Marshal, the claims are barred by explicit statutory provision, which also applies to the State under respondeat superior. Each of these limitations on the waiver of immunity is discussed below.[8] The State moves for dismissal herein both on the Eleventh Amendment as it is dependent upon these immunities and, independently, on each immunity in its own right.

---

[6] In a diversity case the Federal Court must follow State substantive law. See D'Onofrio Construction Company, Inc., v. Recon Company, Inc., 255 F.2d 904 (1st Cir. 1958). See also La Plante v. Honda Motor Co., Inc., 27 F.3d 731 (1st Cir. 1994).

[7] 9-31-1(a) The state of Rhode Island and any political subdivision thereof, including all cities and towns, shall, subject to the period of limitations set forth in § 9-1-25, hereby be liable in all actions of tort in the same manner as a private individual or corporation; provided, however, that any recovery in any such action shall not exceed the monetary limitations thereof set forth in this chapter.

[8] These limitations are defenses in their own right, i.e., the public duty doctrine bars this action without any reference to the Eleventh Amendment. This memorandum addresses the Eleventh Amendment, however, because it creates additional procedural rights to these defendants, such as pre-trial appeal, even though it is dependent upon a lack of waiver under the Torts Claims Act.

### A. The State Has Not Waived Its Sovereign Immunity For The Acts And Omissions Alleged

Prior to the enactment of P.L. 1970, ch. 191, Section 2, under Rhode Island law, a tort action would not lie against the State or any political subdivisions thereof. (P.L. 1970, ch. 191, Section 2 is now codified at R.I. Gen. Laws Section 9-31-1 (1969 Reenactment)). Until the enactment of that statute, the State had an absolute defense to tort claims under the common law doctrine of sovereign immunity. The statute waiving the defense is, therefore, in derogation of the common law and the statutory language must be strictly construed. See Andrade v. State, 448 A.2d 1293 (R.I. 1982). The Rhode Island Supreme Court has repeatedly held that the waiver of sovereign immunity is not absolute, but is strictly limited and that members of the general public are not authorized to recover from the State for injuries resulting from the breach of a duty owed to the public at large. And twenty years ago the Supreme Court held that a Deputy Fire Marshal's duty was to the public at large. See Bitgood v. Allstate Insurance Co., 481 A.2d 1001, 1006 (R.I. 1984).

An individual may bring an action against the State if, and only if, that individual can allege the breach of a special duty owed to him or her as a specifically identifiable person. The breach alleged herein involves a duty owed to the public at large and not a special duty owed to the plaintiffs individually. A review of the case law interpreting Rhode Island's limited waiver of sovereign immunity clearly establishes that this complaint must be dismissed for failure to state a claim against the State and Irving J. Owens.

The Rhode Island Supreme Court has repeatedly explained the distinction between the State's liability, or lack thereof, when a duty is owed to the general public as

opposed to a duty owed to a specifically identifiable individual. In Ryan v. State Dep't of Transp., 420 A.2d 841 (R.I. 1980), the Rhode Island Supreme Court affirmed an order dismissing the plaintiff's complaint against the Department of Transportation and the Registrar of Motor Vehicles. Therein the plaintiff claimed that the State had been negligent in issuing a license to operate a motor vehicle in Rhode Island to a person who subsequently injured him in an automobile accident. In affirming the dismissal, the Court held that: "In suits brought against the State, plaintiffs must show a breach of some duty owed them in their individual capacity and not merely a breach of some obligation owed to the general public." Id. at 843.

The Rhode Island Supreme Court found that in empowering the Registry to withhold the reinstatement of drivers' licenses, the legislature had as its purpose the protection of the public at large and not an individual member of the general public. Therefore, any negligence on the part of the Registrar did not involve a duty owed to the plaintiffs in their individual capacities and, as such, sovereign immunity had not been waived with respect to their claim.

This distinction was further explained by the Supreme Court in Orzechowski v. State, 485 A.2d 545 (R.I. 1984), (affirming order dismissing plaintiffs' complaint for failure to state a claim upon which relief could be granted). In Orzechowski, the plaintiffs claimed that the State Parole Board had been negligent in paroling a prisoner who subsequently injured one of the plaintiffs. Relying on its prior decision in Ryan v. State Dep't of Transp., supra, the Court held that the Parole Board's duty was to the public at large and that, in the absence of a special duty owed to the plaintiff personally, the case was properly dismissed.

In 1985, the Supreme Court elaborated on this principal in Knudsen v. Hall, 490 A.2d 976 (R.I. 1985) (affirming the granting of a directed verdict in favor of the defendant, State of Rhode Island). The Knudsen case arose out of an automobile intersection accident. The plaintiff claimed that the State was negligent in failing to properly maintain the intersection. Although the Court found that the State had a statutory responsibility to maintain the intersection[9] where the accident occurred, it further found that the State's duty was to the general public rather than to the individual plaintiffs. The Court explained its holding affirming the directed verdict in the following manner:

> The State's duties in this respect clearly extend to the motoring public in general. In the cases in which we have affirmed the existence of a special duty, either the plaintiffs have had prior contact with the State or municipal officials who then knowingly embarked on a course of conduct that endangered the plaintiffs, or they have otherwise specifically come within the knowledge of the officials so that the injury to the particularly identified plaintiff can or should have been foreseen. No such circumstances have been alleged by the Knudsens. There is not a shred of evidence on the record before us that would indicate that the Knudsens could have been foreseen as a "specific, identifiable" victim of the State's negligence here. Id. at 978.

The Rhode Island Supreme Court once again affirmed the above line of cases in Kowalski v. Campbell, 520 A.2d 973 (R.I. 1987) (affirming judgment in favor of the State where plaintiff claimed that the State had been negligent in marking a highway). Kowalski was a negligence action arising out of the collision of a van with a railroad trestle. Therein, the passenger of the van brought a negligence action against the driver,

---

[9] Similar to a statutory duty to inspect.

who, in turn, joined the State as a third-party defendant alleging that the collision occurred because of the State's negligence in maintaining safety lines on a highway that would have alerted the driver of the hazard presented by the trestle. In reversing a Superior Court decision, the Rhode Island Supreme Court held that in the absence of a special duty owed to the driver and passenger by the State, the State, even if negligent in maintaining the safety lines on the highway, was not liable under the statute that abrogated the doctrine of sovereign immunity with respect to the State's tortious conduct. Accordingly, the Court ruled that the State was entitled to the granting of its motion for a directed verdict and entry of judgment in its favor as a matter of law.

In a decision that preceded The Station fire by only five weeks, the Rhode Island Supreme Court affirmed the State's immunity based on a fact situation legally analogous to the allegations made herein. In Haworth v. Lannon, 813 A.2d 62 (R.I. 2003), the Court upheld the granting of a summary judgment motion in favor of the Town of Warren, which had been accused of damaging residents by negligently inspecting two homes. Even though a known builder (and owner of the homes) had obtained certificates of occupancy from the Town prior to the inspections, and even though the Town knew the homes would soon be sold to individuals, the Supreme Court found that the plaintiff homeowners were not specifically identifiable individuals who could pierce the Town's sovereign immunity. Therefore, the Court held that the Town could not be liable for negligent inspections as a matter of law.

The Rhode Island Supreme Court rested its holding on the well established policy that the public treasury should not be exposed to claims for acts done for the public good as a whole. Id. at 66. Citing O'Brien v. State, supra, at 337, it held that acts done for the

public good as a whole (including specific home inspections) cannot reasonably be compared with functions that are or may be exercised by a private person. Id. Thus, it is clear that when performing acts of governance such as those alleged in the complaint on file herein (inspecting, legislating, funding agencies) the State and its employees are performing a public duty and are immune from suit even where it is alleged that they performed that duty negligently.

Viewing the facts in the light most favorable to them, the plaintiffs can only assert that they were members of an unlimited group consisting of millions of potential patrons of The Station at the time of or following the acts alleged to have been performed (or neglected) by Rhode Island. The individual plaintiffs were no more specifically identifiable than were the two homeowners in Haworth. Like the homeowners in Haworth, plaintiffs herein seek damages from the State for governmental acts, but also like the homeowners in Haworth they cannot state a claim against the State of Rhode Island.

Only five weeks before this tragic fire the Rhode Island Supreme Court stated that the public duty doctrine "continues to serve a pragmatic and necessary function because it can encourage the effective, administration of governmental operations by removing the threat of potential litigation." Id. at 66. Internal quotations omitted. Thus, sovereign immunity requires that Rhode Island and Owens must be dismissed from this case.

More recently in Torres v. Damicis, No. 2003-576-Appeal, 2004 WL 1404355, at 1 (R.I. June 24, 2004) the Rhode Island Supreme Court again upheld public duty doctrine immunity for a municipality that had been accused of improperly issuing a building permit in violation of R.I. Gen. Laws § 5-65-3. The Court began its review by stating:

> The public duty doctrine arose out of the state's sovereign immunity from suit when engaging in uniquely governmental functions. We previously have explained, "[h]istorically, under the common law, the state, as well as a municipality, enjoyed sovereign immunity, which could be waived only by the state's deliberate and explicit waiver." Graff, 695 A.2d at 489 (citing Mulvaney v. Napolitano, 671 A.2d 312, 312 (R.I.1995) (mem.)). We presume that sovereign immunity has not been waived unless we can find explicit indices of waiver. "[T]he Legislature did not intend to deprive the State of any sovereign power 'unless the intent to do so is clearly expressed or arises by necessary implication from the statutory language.' " Id. (quoting In re Sherman, 565 A.2d at 872). We also have said that in determining whether a waiver exists "the language of the statute must be closely parsed and strictly construed." Reagan Construction Corp. v. Mayer, 712 A.2d 372, 373 (R.I.1998) (per curiam). Id. at 3.

Even though the Torres Court found (and the parties agreed) that the Town had violated the law in issuing the permit, it held that defendants were immune from suit. Specifically, the Court stated: "On previous occasions we held that "[t]he activities and the inspection that are required to ensure compliance with the state building code cannot be engaged in by private enterprise.'" Id. at 15. The Court concluded that "[a]ny damages caused by the alleged negligence of a municipal building inspector during the performance of his or her employment, therefore, qualifies for the tort immunity provided by the general public duty doctrine." Id.. Internal citations omitted. It is, therefore, clear that under Rhode Island law, which governs this partial diversity action, both the State and Mr. Owens are immune from suit for the acts and omissions alleged.

Sister states have used the public duty doctrine to shield governmental entities from liability in situations similar to that before this Court. See for example, in Stone v. North Carolina Dept. of Labor, 495 S.E. 2d 711, 347 N.C. 473 (N.C. 1998). In Stone

individuals who were injured in a fire at a food products plant sued the North Carolina Department of Labor for negligently inspecting the plant. The alleged negligent inspection allowed eighty three violations, including inadequate and blocked exits and inadequate fire suppression systems to remain in the plant. Id. at 713. The Court first reviewed North Carolina's statutory waiver of sovereign immunity, which is extremely similar to Rhode Island's,[10] but then ruled that the statutory waiver did not abolish the common law public duty doctrine and affirmed a dismissal pursuant to North Carolina's Rule 12(b)(6). The North Carolina Court further noted that the relevant inspection statutes did not authorize a private right of action, which was further proof that the public duty doctrine granted immunity for the allegedly negligent inspection. Id. at 482. Compare this ruling to Accent Store Design v. Marathon House, 674 A.2d 1223, 1225-1226 (R.I. 1996)(Even though State neglected to obtain mandatory performance bond from contractor, it was not liable to injured subcontractor because statute (R.I. Gen. Laws § 37-13-14) did not provide private right of action). See also Corbin v. Buchanan, 657 A.2d 170 (Vt. 1995)(ordinance requiring inspection and correction of dangerous conditions did not provide private right of action for tenant's son who died from smoke inhalation in fire).

Continuing, the North Carolina Supreme Court, held that any duty to inspect the food products plant was a duty to the general public, not to the individuals who would occupy the plant. Id. at 482-483. The alleged negligent inspection, therefore, did not breach a duty to any plaintiff and the public duty doctrine required entry of judgment for the State. See also Grogan v. Commonwealth, 577 S.W. 2d 4 (Ky. 1979).

---

[10] Compare N.C.G.S § 143-291 to R.I. Gen. Laws § 9-31-1, et seq. (State is liable "if a private person would be liable to the claimant in accordance with the laws of North Carolina.")

In Evon v. Andrews, 559 A.2d 1131, 1132 (Conn. 1989) the Supreme Court of Connecticut found no error in the lower Court's decision to strike the plaintiff's count of negligence against a municipality and various city officials. The Evon case arose out of a negligence action filed by the decedent's family against the city and its officers for failure to properly enforce various statutes, regulations and codes on a multi-family rental unit that was destroyed in a fire. The plaintiffs claimed that the alleged negligent acts were either "ministerial in nature, or discretionary acts that subjected an identifiable person to imminent harm." Id. at 1133.

The Supreme Court of Connecticut disagreed and concluded that because inspections require certain standards, which involve the exercise of judgment by a municipal employee, the acts were not ministerial, and, therefore, the city and its officers were immune from liability. Id. at 1134. Moreover, with respect to the duty owed to a "readily identifiable" group of persons subject to imminent harm, the Court stated:

> The risk of fire implicates a wide range of factors that can occur, if at all, at some unspecified time in the future. The class of possible victims of an unspecified fire that may occur at some unspecified time in the future is by no means a group of "identifiable persons"…. In the present instance, the fire could have occurred at any future time or not at all. Id. at 1135

Thus, because the plaintiffs' decedents were not "readily identifiable victims subject to imminent harm," the city and its officers were relieved of all liability.

The Court of Appeals in O'Connor v. City of New York, 447 N.E.2d 33 (N.Y. 1983) reversed an order that held a municipality liable for damages resulting from an explosion because no special relationship existed between the city and the injured parties.

In O'Connor, twelve people were killed, and several others injured, when a gas explosion leveled a three story building in the middle of the city.

The plaintiffs based their actions against the city on the city inspector's failure to discover the presence of an open-ended pipe and the lack of a shut-off valve during inspections conducted on a gas system in a new restaurant before the explosion. Id. at 34. In spite of the system's noncompliance with relevant rules and regulations, the city inspector issued a card, required by law, to the gas company to resume service. Id. at 34. The gas company had scheduled a final check before the system was approved, however, there was never an opportunity to conduct a final inspection. In anticipation of opening the business over the weekend, the owner made arrangements to turn on the gas from an independent provider. Subsequently, gas escaped from the uncapped pipe and leaked inside the building resulting in the devastating explosion.

The O'Connor Court held that the City of New York was not liable to the plaintiffs despite the city inspector's failure to observe the violations and demand they be corrected. In dismissing the complaint, the Court relied upon the well established principle that imposes no liability upon a municipality for failure to enforce a statute or regulation when no special relationship exists between the defendant and the plaintiff. Because the gas regulations created a duty to the plaintiffs as members of a community, not as individuals, the Court did not impose liability on the city. Id. at 36. In its reasoning, the Court noted that "the imposition of such liability, in addition to posing a crushing financial burden, might well discourage municipalities from undertaking activities to promote the general welfare." Id. As such, the Court concluded that the

imposition of liability to individuals for a municipality's failure to enforce statutes or regulations should come from the Legislature. Id.

In an earlier New York case a fire captain in responding to a fire in a building discovered a defective heater yet he did not remove it, order it removed or report it to the Commissioner of Public Safety. When City was sued for damages after the defective heater caused a second fire, the Court upheld a dismissal for the City finding that even the direct contact with the homeowner and the personal knowledge of the fire captain did not overcome the public duty doctrine. Motyka v. City of Amsterdam, 204 N.E.2d 635 (N.Y. 1965).

In Hage v. Stade, the Minnesota Supreme Court held that the state could only be liable for negligent omissions if it owed a duty to a particular class of persons. 304 N.W.2d 283 (Minn. 1981). Hage involved several wrongful death actions brought by the trustees for the heirs of thirteen people who died in a hotel fire. The plaintiffs claimed that the state and its agents negligently failed to enforce proper fire codes and safety measures that contributed to the death of plaintiffs' decedents.

In affirming the judgment below, the Court discussed the distinction between a duty owed to the public and a duty owed to individual members of the public as the basis for a negligence action. The Court noted:

> [A] municipality does not owe any individual a duty of care merely by the fact that it enacts a general ordinance requiring fire code inspection or by the fact that it undertakes an inspection for fire code violations. A duty of care arises only when there are additional indicia that the municipality has undertaken the responsibility of not only protecting itself, but also undertaken the responsibility of protecting a particular class of persons from the risks associated with fire. Id. at 286. Citing

Cracraft v. City of St. Louis Park, 279 N.W.2d 801, 806 (Minn. 1979)

Additionally, the Court reiterated four factors used by the trial court to determine whether a government entity assumed a duty to act for the protection of others: 1) the government's knowledge of the dangerous condition, 2) reasonable reliance by individuals on the government conduct (not the inspection in general but specific actions that cause the individuals to forgo other methods of protecting themselves), 3) an ordinance or statute that clearly sets forth mandatory acts for a particular class of persons, and 4) the government's lack of due care that increases the risk of harm. Id.

After reviewing these considerations, the Hage Court concluded that the second and fourth factors were not present. Id. at 287. It also held that though there was a statute unique to hotel inspections, even that did not create a special duty for the State. The Court determined that the statute protected not only the hotel guests with sleeping accommodations, but also hotel restaurant patrons, hotel visitors, persons attending meetings and neighboring buildings. Because the statute protected the public as a whole not a particular class of persons, the failure to comply with it was not a basis for imposing liability on the state. Therefore, no duty was imposed on the State. Id. Rhode Island, of course, has never adopted a similar test that could create an exception to the public duty doctrine, nor does it have the more specific statute at issue in Hage.

In Dufrene v. Guarino, 343 So. 2d 1097, 1098 (La. Ct. App. 1997)(Cert denied 343 So.2d 1069 (1977)) the Court held that a city's alleged negligent inspection of a lounge did not establish a cause of action because both the city and its agents did not owe the patron an individual duty. Dufrene involved a patron who brought suit against the city, state and its officers after suffering injuries from a fire that erupted in a lounge. The

patron claimed that the city's improper inspections created hazardous conditions causing the fire and prevented his escape from the building.

In affirming the judgment below, the Dufrene court cited with approval to the legal principle in the Fourth Edition of Cooley on Torts § 300:

> The failure of a public officer to perform a public duty can constitute an individual wrong only when some person can show that in the public duty was involved also a duty to himself as an individual, and that he has suffered a special and peculiar injury by reason of its nonperformance.

Because the duty to inspect against potential hazards was imposed to protect the public, the Court concluded that the city and its agents owed no individual duty to patrons of the lounge whether the allegations were that the City had failed to perform its duty or had performed it in an inadequate or erroneous manner. Id. at 1099. The Court reasoned that imposing "liability in damages for the failure to enforce regulations might compel the government, by economic necessity, to repeal such regulations and thereby deprive the public of their benefits." Id. at 1100. Thus, in Dufrene the state and municipality, treated as private citizens, owed no duty to the plaintiff.

The public duty doctrine is an immunity long recognized by multiple Courts, including the Rhode Island Supreme Court, as a shield for the State in circumstances such as those alleged herein. It is a doctrine necessary to prevent an "*overwhelming* burden" (Stone, supra at 481. Emphasis added) on government's limited resources and it should not be circumvented absent a legislature's clear and explicit enactment. Id at 479. Not only has Rhode Island's legislature not abolished the public duty doctrine in the more than twenty (20) years that our Courts have applied it subsequent to the adoption of Rhode Island's Tort Claims Act, but the Legislature has actually provided additional

immunity for the types of inspections that are the subject of this complaint. See R.I. Gen. Laws § 23-28.2-17 and the discussion below.

**B. Additionally Defendant Owens Has Statutory Immunity for His Acts**

Fire Marshal Owens clearly did not legislate or fund his agency. Therefore, any claim against him must necessarily be limited to inspection and/or training. It does not matter, however, how narrow or expansive the allegations are against him, as he has the broadest conceivable statutory protection. R.I. Gen. Laws § 23-28.2-17 states:

> In no case shall the fire marshal ... be liable for costs in any action, suit, or proceedings that may be instituted in pursuance of the provisions of the Fire Safety Code, and any fire marshal, acting in good faith and without malice shall be free from liability for acts performed under any of its provisions *or by reason of any act or omission in the performance of his or her official duties in connection herewith.* Emphasis added.

Thus, Fire Marshal Owens, and the State because it is named for his alleged acts or omissions, must be dismissed from this case. The State must also be dismissed under this immunity statute since its claimed liability is through respondeat superior. There is no factual allegation in any complaint that raises an issue of malice by any employee of the State.

**C. Legislative Immunity**

To the extent the State (and Fire Marshal Owens) have been sued for failure to enact legislation or to fund the office of the fire marshal (or any other office), those are legislative acts for which they have legislative immunity. See Bogan v. Scott-Harris, 523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998); Gardner v. Cumberland Town Council, 826 A.2d 972 (R.I. 2003); Maynard v. Beck, 741 A. 2d 866 (R.I. 1999),

Supreme Court of Virginia v. Consumers Union of The United States, Inc., 446 U.S. 719, 100 S.Ct. 1967 (1980).

**D. Quasi Judicial Immunity**

The State and Fire Marshal Owens further submit that they are entitled to absolute immunity based upon the fact that plaintiffs' claims seek to recover for the exercise of quasi-judicial/prosecutorial authority. As more fully outlined below, the Fire Marshal's discretionary authority to order that violations of the Fire Code be corrected is a quasi-judicial function that entitles the Fire Marshal to absolute immunity for the corresponding decisions made in the exercise of this authority.

First, there can be no dispute that officials exercising quasi-judicial or quasi-prosecutorial authority are entitled to absolute immunity for their discretionary acts. Butz v. Economou, 438 U.S. 478 (1978). See also Psilopolous v. State, 636 A.2d 727 (R.I. 1994); Mall at Coventry Joint Venture v. McLeod, 721 A.2d 865, 870 (R.I. 1998). As explained by the Supreme Court "agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts." Butz, 438 U.S. at 515. This permits the authority to make decisions without fear of having to defend a retaliatory response. Id. In Psilopolous v. State, 636 A.2d 727 (R.I. 1994), the R.I. Supreme Court likewise held that agents of the state who performed a quasi-judicial function were entitled to immunity both for themselves and for the sovereign entity that employed them. Id. at 727-28 citing Butz v. Economou, 438 U.S. 478 (1978). The R.I. Supreme Court has also noted that it "sternly opposes the bringing of separate actions against agency officials in respect to their performance of quasi-

judicial or quasi-prosecutorial functions." Mall at Coventry Joint Venture v. McLeod, 721 A.2d 865, 870 (R.I. 1998).

The State defendants submit that the challenged actions of the Fire Marshal in the instant case clearly fall within the quasi-judicial functions entitled to absolute immunity. "[Quasi judicial] is defined as a term applied to the action and discretion of public administrative officers, who are required to investigate facts, or ascertain the existence of facts, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature." Suitor v. Nugent, 98 R.I. 56, 61 (R.I. 1964) quoting State v. Winne, 91 A.2d 65 (NJ 1952).[11] Fire Marshals perform such quasi-judicial functions when called on to inspect buildings for fire code violations. R.I. Fire Prevention Code, § 1-4.3.

Under the Fire Safety Code, promulgated in conjunction with General Law Chapters 23-28.1 through 23-29.1, the Fire Marshal and by designation, the deputy fire marshals, may "order any person(s) to . . . remedy such dangerous or hazardous condition." R.I. Fire Prevention Code, § 1-4.4. Individuals aggrieved by such a decision may take an appeal to the Fire Safety Code Board of Appeal & Review. Id. These functions epitomize the actions defined by the R.I. Supreme Court as "quasi-judicial functions." Suitor, 98 R.I. at 61. See also Bolden v. City of Covington, 803 S.W.2d 577, 581 (KY 1991)(activities assigned by housing code in relation to investigation of fire and

---

[11] "Quasi-judicial" functions have also been defined as those positions that "entail[] making decisions of a judicial nature -- i.e. decisions requiring the application of governing rules to particular facts, an 'exercise of reasoned judgment which could typically produce different acceptable results.'" *Wantanabe Realty Corp. v. City of New York, 2003 U.S. Dist. LEXIS 17645, *5 (S.D.NY 2003)*. Just like the defendant Commissioner in *Wantanabe*, the Fire Marshal (more correctly his deputies) in the instant case had to apply the governing rules, the State Fire Code, to the Station nightclub and make a judgment as to whether the nightclub violated those provisions then exercise their discretion as to the manner of enforcement and compliance. The defendants performance of these quasi-judicial functions is accordingly protected by absolute immunity. *Id.*

safety violations are quasi-judicial in nature); Overhoff v. Ginsburg Development, L.L.C., 143 F.Supp. 2d 379, 386 (S.D.N.Y. 2001) (action of a building inspector in determining whether or not an applicant is entitled to issuance of a building permit or in the issuance of a stop-work order is discretionary and quasi-judicial in nature).

In Bolden v. City of Covington, 803 S.W.2d 577, 581 (KY 1991) the Kentucky Supreme Court reviewed a Court of Appeals ruling that found a City and its employees were protected by quasi-judicial immunity for failing to close a building or force correction of fire code violations that allegedly led to the plaintiff's injury in a subsequent fire. Plaintiffs sued the City's Housing Director for failing to enforce the fire safety code. The Court stated:

> These steps classify as regulatory and quasi-judicial in nature. Legal liability flowing from the existence of these fire and safety violations rests on the owner or other person in possession and control of the building. The duties assigned by the ordinances to the Director and city inspectors are to find or confirm violations, and to decide what needs to be done, whether repairs or placarding the building. The judicial nature of these decisions is underscored by the fact that there are avenues of appeal from the decision of the Director to a reviewing authority and to the courts. There is no more legal liability in this situation for the City than there would be where a judge fails to make a decision or makes a wrong one. The trial court's decision that the City must respond in tort in this situation was in error, not because the City enjoys immunity from tort liability, but because the incompetent performance of decision-making activity of this nature by a governmental agency is not the subject of tort liability. Id. at 581.

This use of quasi-judicial immunity is entirely consistent with the Rhode Island Supreme Court's decisions in both Psilopolous v. State, supra and Mall at Coventry Joint Venture v. McLeod, supra (DEM was acting in a quasi-judicial capacity in administering the

Fresh Water Wetland Act).[12] As such, the Fire Marshal is absolutely immune from suit for his quasi-judicial function of inspecting the premises at issue in the instant and the instant Complaint should be dismissed as against these State defendants.

Again, each of these immunity defenses compels dismissal both under the Eleventh Amendment *and in their own right* and the State and Fire Marshal Owens so move.

## III. State Law Does Not Create A New Cause Of Action Or Impose A Duty That Creates Liability In This Case

"In order to prevail on a claim of negligence in Rhode Island, a plaintiff must prove that: (1) the defendant owed the plaintiff a legal duty to refrain from negligent activities; (2) the defendant breached that duty; (3) the breach proximately caused harm to the plaintiff; *and* (4) there was actual loss or damage resulting." The Travelers Insurance Co. v. Priority Business Forms, Inc., 11 F. Supp.2d 194, 197 (D.R.I. 1998)(citing Splendorio v. Bilray Demolition Co., Inc., 682 A.2d 461, 466 (R.I. 1996))(Emphasis added.) Thus, if there were no immunity Plaintiffs must establish both that the State owed Plaintiffs a legal duty *and* that the State's alleged acts and/or omissions were the proximate cause of Plaintiffs' harm. As a matter of law, Plaintiffs cannot establish either one of these two legal requirements.

### A. Duty

To sustain their negligence claims against the State, Plaintiffs must establish that the State owed them a legal duty that it breached. See Travelers, 11 F. Supp.2d at 197. It is well-established that whether or not a duty exists in a particular factual situation is a

[12] The Court also held that "the duty to depict accurately the location of wetlands was properly the duty of Mall Venture and its representatives" and plaintiffs could not sue DEM for damages even though a DEM employee had erroneously given preliminary approval to plaintiff's plans. Id. at 868. The duty to comply with wetlands regulations, the Court found, did not pass to the regulators even though they had direct contact with and were being sued by the regulated entity, not a more remote third party.

question of law, and thus one that the court determines. Santucci v. Citizens Bank of R.I., 799 A.2d 254, 256 (R.I. 2002); Olivier v. State of Rhode Island, 1984 R.I. Super. Lexis 128 (R.I. Super. Feb. 16, 1984); Travelers, 11 F. Supp.2d at 198. "The existence of a legal duty is purely a question of law, and the Court alone is required to make this determination." Volpe v. Gallagher, 821 A.2d 699, 705 (R.I. 2003) (quoting Kuzniar v. Keach, 709 A.2d 1050, 1055 (R.I. 1998)).

**1. Regulatory Enactments Do Not Create a Cause of Action for Their Breach**

A question for this Court is, does Rhode Island regulatory law create a new cause of action? The Rhode Island Supreme Court has already ruled on that question and their answer was, No.

It cannot be disputed that any responsibility the State or its employees had in relation to The Station nightclub arose by regulatory statute. It is equally undisputed that nothing in those regulations created a private right of action against the State or its employees in favor of any person or entity. Rather, the regulatory scheme clearly demonstrates the legislative intent to shield the State from litigation such as this case. R.I. Gen. Laws § 23-28.2-17. Even without such an explicit legislative declaration the Supreme Court in Accent Store Design v. Marathon House, 674 A.2d 1223, 1225 (R.I. 1996), ruled that a regulatory statute "clearly does not create any express right of action" if the State fails to comply with it. The Court stated: "Because no tort remedy has been established by statute, plaintiffs have essentially asked this Court to create a new cause of action by judicial rule. We have long held, however, that the creation of new causes of action is a legislative function." See also Corbin v. Buchanan, 657 A.2d 170 (Vt. 1995).

Even without the explicit legislative grants of immunity created by R.I. Gen. Laws § 23-28.2-17, other Courts have long recognized that a governmental "duty" under regulatory enactments differs from the traditional tort duty of a non-governmental entity. For example, in Grogan v. Commonwealth, 577 S.W.2d 4 (Ky. 1979) after acknowledging that sovereignty did not protect a municipality from tort liability arising from deaths and injuries in a supper club fire due to allegedly negligent inspections, the Court analyzed the duty that arose under regulatory statutes and affirmed a dismissal on the pleadings for both a city and the state.

At the outset the Court noted:

> "[A] city's relationship to individuals and to the public is not the same as if the city itself were a private individual or corporation, and its duties are not the same. When it undertakes measures for the protection of its citizens, it is not to be held to the same standards of performance that would be required of a professional organization hired to do the job. If it were, it very well might hesitate to undertake them.... A city cannot be held liable for its omission to do all the things that could or should have been done in an effort to protect life and property." Id. at 5. Citing Frankfort Variety, Inc. v. City of Frankfort, Ky, 552 S.W.2d 663, 655 (1977).

In Grogan, as in the case at bar, plaintiffs alleged that governmental entities had failed to enforce laws and regulations and that such failures proximately caused their losses. The Grogan Court noted that common law as applied to individuals did not offer "any reasonably comparable analogy" to the claims against the governmental entities. Id. at 5. Since governmental entities had no liability to individuals at common law, this ruling is not surprising.

Continuing, the Court noted that by enacting laws for public safety, the government did not undertake to perform the regulated task, but, rather, sought only to compel others to do it, and as one of the means of enforcing that purpose it may direct its officers and employees to perform an inspection function. Id. Thus, under common law or regulatory enactments, the burden to comply with safety standards and the legal duty to third parties for the failure to comply does not transfer from the regulated (inspected) entity to the government by the enactment of those regulatory laws.

> The failure of its officers and employees to perform [an inspection] does not constitute a tort committed against an individual who may incidentally suffer injury or damages, in common with others, by reason of such default. Id., citing City of Russellville v. Greer, Ky, 440 S.W.2d 269, 271 (1969). Internal quotations omitted.

Duty, as recognized in tort law, even without relying on principles of immunity, cannot be written into a statute by the judiciary when the legislature has declined to do so. See Accent Store Design, supra.

As the Grogan Court noted, "[E]ven by resort to common-law logic the appellants have no case against the city .... [A] government ought to be free to enact laws for the public protection without thereby exposing its supporting taxpayers (including, of course, those yet unborn) to liability for failures of omission in its attempt to enforce them. It is better to have such laws, even haphazardly enforced, than not to have them at all." Id., at 6.

The policies discussed in Grogan are also supported by Rhode Island case law. For example, in Orzechowski v. State, 485 A.2d 545 (R.I. 1984) the Supreme Court stated: "The very nature of a sovereign's obligations to its people make this distinction

crucial; to hold otherwise would result in exposure to liability for practically every action taken in the governance of its citizens. Further, a contrary rule would invite judicial scrutiny of every act of the other branches of government which has some effect upon the public. Such scrutiny could very well implicate the doctrine of separation of powers." Id. at 549, FN 3.

Also in Mall at Coventry Joint Venture v. McLeod, 721 A.2d 865 (R.I. 1998) the Supreme Court affirmed a Rule 50 judgment for the State in a case where DEM inspectors had erroneously given preliminary approval to a developer's wetlands plan, only to change the designation after he contracted to sell the land in a manner that allegedly killed the sale. Though the jury had awarded the plaintiff over $1,600,000, the Supreme Court found that "The duty to depict accurately the location of wetlands was properly the duty of Mall Venture and its representatives." Id. at 868. As a matter of law this duty did not pass to the regulators even though they had direct contact with and were being sued by the regulated entity (owner/developer), not by a more remote third party.

Governments seek by regulation to compel others to act in a certain manner but they do not transfer to themselves either the obligation to comply with the regulation(s) or the liability for injuries that result from non-compliance. Duty, as it exists in tort law, remains only with the regulated entity.

**2. Even a Non-Governmental Analysis of "Duty" Compels Dismissal for The State**

The Supreme Court of Rhode Island has "articulated several factors that may be considered in determining whether a duty exists, including the foreseeability and likelihood of the injury to the plaintiff, the connection between the defendant's conduct and the injury suffered, the policy of preventing future harm, and the consequences to the

defendant and the community of imposing a duty of care on the defendant with resulting liability for breach." Santucci v. Citizens Bank of R.I., 799 A.2d 254, 256-257 (R.I. 2002).

The Rhode Island legal duty analysis — employing "foreseeability" and "likelihood" with a necessary "connection" between "conduct and the injury," and culminating in a balancing of interests test — clarifies the State's right to dismissal of this case. It was neither likely nor foreseeable that pyrotechnics would be illegally used with no notice to the State to ignite a fire in a nightclub. To conclude otherwise would impose upon the State a duty to have somehow anticipated the incredible and illegal events that lead up to the horrendous fire that occurred at The Station.

Moreover, consideration of the factors enumerated in Travelers, Santucci and Olivier support the conclusion that the State did not have a legal duty upon which liability can be based. "[I]f no such duty exists, then the trier of fact has nothing to consider" and the Plaintiff's complaint must be dismissed for failure to state a claim. Banks v. Bowen's Landing Corp., 522 A.2d 1222, 1225 (R.I. 1987)).

In a decision only two months before The Station fire, the Court of Appeals for Ohio's Tenth Appellate District held that a state fire marshal had no duty to persons injured in a fire at a fireworks store that was caused by a third party's intentional ignition of the fireworks. § 2743.02 (A)(1). Wallace v. Ohio Dept. of Commerce, Div. of State Fire Marshall, No. 99AP-1303 2003, Ohio App. Lexis 6180 (Ohio Ct. App. Dec. 18, 2003) Appeal denied May 12, 2004.

The Wallace case arose from a fire caused by a man who lit a cigarette in fireworks store that killed nine people and injured several others. The store had been

issued a license to operate by the fire marshal at the time of the fire. As required by statute, the fire marshal inspected the store in early fall and proceeded to conduct two more seasonal inspections to ensure compliance with applicable statutes and regulations thereafter. During this time, the fire marshal determined that the store's sprinkler system was functional. Subsequently, a commercial competitor informed the fire marshal that the store had sold a restricted type of firework to an unauthorized buyer. In response to that information, a field supervisor organized a raid of the store during which time all seasonal inspections were postponed. As a result, no inspections were conducted before the fatal fire.

In evaluating the existence of a duty,[13] the Court in Wallace relied on the foreseeability test. The court noted that the foreseeability of injury was usually dependant on the defendant's knowledge, and therefore, a defendant should recognize "only those circumstances that a defendant perceived, or should have perceived, at the time of a defendant's action." Id. at 12. Furthermore, the Wallace Court stated:

> Ordinarily, there is no duty to control the conduct of a third person by preventing him or her from causing harm to another, except in cases where there exists a special relationship between the actor and the third person which gives rise to a duty to control, or between the actor and another which gives the other the right to protection. Thus, liability in negligence will not lie in the absence of a special duty owed by a particular defendant. Id. at 12-13

In its holding, the Court also addressed the issue of foreseeability as to the criminal acts of a third party and concluded that liability would only be imposed if the misconduct was anticipated and the risk unreasonable. Id. at 14. See also Orzechowski

[13] Wallace lacks precedential value on immunity and the public duty doctrine because the Ohio Supreme Court had previously ruled they did not apply in that State. See Wallace v. Ohio Dept. of Commerce, Div. of State Fire Marshall, 773 N.E.2d 1018, 96 Ohio St.3d 266 (Ohio 2002).

v. State, supra. Because the state fire marshal had no special relationship with the plaintiffs and did not anticipate the criminal misconduct, no duty existed to protect the plaintiffs or control the action of the third person.

The factors considered even at common law in determining whether a legal duty exists weigh heavily against imposing a duty on the State. It would be too onerous a burden to require anticipation of the blatantly illegal acts that caused this fire.

**B. Plaintiffs' Injuries Were Caused by Illegal and Negligent Intervening Acts of Others for Which the State Is Not Responsible**

The Complaint fails to assert facts that, if proven, would establish that the State's acts or omissions as alleged were the proximate cause of the Plaintiffs' injuries. Moreover, Plaintiffs cannot establish proximate cause because of the intervening acts that led to the fire. The acts that occurred between the State's alleged negligence and The Station fire superceded any negligence by the State, thereby breaking any causal chain connecting it to Plaintiffs' injuries. In the absence of factual allegations supporting proximate cause — an essential element of each claim — the claims fail as a matter of law.

Assuming, *arguendo,* that the State was negligent (and had a duty to third parties, and was not protected by immunity), its negligence was not the proximate cause of Plaintiffs' injuries. Under Rhode Island law:

> [A] defendant's original act of negligence will be considered as a remote and not a proximate cause of a plaintiff's injury when there is an intervening act on the part of a responsible third person unless it be made to appear that the defendant should have anticipated that such an intervening act would be a natural and probable consequence of his own act.

The Travelers Insurance Co. v. Priority Business Forms, Inc., 11 F. Supp.2d 194, 199

(D.R.I. 1998) (citing Nolan v. Bacon, 216 A.2d 126 (R.I. 1966)).

In Travelers, the court explained that although proximate cause is normally a question of fact, the Rhode Island Supreme Court "has not hesitated, in certain circumstances, to declare the absence of proximate cause as a matter of law." Travelers, 11 F. Supp.2d at 199 (citing Splendorio v. Bilray Demolition Co., 682 A.2d 461 (R.I. 1996); Walsh v. Israel Couture Post, No. 2274 V.F.W., 542 A.2d 1094 (R.I. 1988); Clements v. Tashjoin, 168 A.2d 472 (R.I. 1961)).

The Travelers court ultimately concluded that the intervening act of arson that resulted in damage to certain premises was not only an illegal act that the defendant who leased the property was not bound to anticipate, it was also not the natural and probable consequence of the lessee's allegedly negligent behavior of disconnecting a burglar alarm system and not informing the landlord. Further, the court found that the presence of flammable chemicals on the premises was a *condition,* rather than a *proximate cause,* of the destruction. According to the court, no danger existed in the unsecured storage of these materials alone and absent the illegal intervening act of arson, the premises would not have been destroyed.

Under Rhode Island law, intervening illegal acts of third persons have been held, as a matter of law, to have broken the chain of proximate causation flowing from a defendant's original negligent acts. See Travelers, 11 F. Supp.2d at 199-200 (discussing Clements and Splendorio). See also Wallace v. Ohio Dept. of Commerce, Div. of State Fire Marshall, supra No. 99AP-1303 2003, Ohio App. Lexis 6180 (Ohio Ct. App. Dec. 18, 2003) Appeal denied May 12, 2004. In Clements, the defendant allegedly left the key in the ignition of his automobile, unattended, and on the grounds of a mental institution. 168 A.2d at 472. A patient at the institution subsequently entered and operated the

vehicle and negligently collided with the plaintiff's auto, injuring the plaintiff. Id. at 472-73. The Rhode Island Supreme Court held that the defendant was not bound to anticipate that his neglect in leaving the key in the ignition would "naturally and probably" result in a patient stealing the vehicle, operating it negligently and injuring the plaintiff. Id. at 474.

The Clements court also cited with approval to 65 C.J.S. Negligence § 111 d:

> Liability cannot be predicated on a prior or remote cause which merely furnishes the condition or occasion for an injury resulting from an intervening unrelated and efficient cause, even though the injury would not have resulted but for such condition or occasion....
> If no danger existed in the condition except because of the independent cause, such condition was not the proximate cause.

Further, the court recognized that the question is generally one of fact, "[b]ut if there is no evidence connecting the alleged negligence with the injury, or if it is obvious that the act or omission was not the natural and proximate cause thereof; the question is for the court." Clements, 168 A.2d at 475.

The allegations of the Complaint in the case at bar demonstrate that the non-fire retardant foam was misused in that the Derderians installed it around the stage as soundproofing without ensuring that the material was fire resistant as required by Rhode Island law. Moreover, OSHA found the Derderians' installation of flammable foam over an interior exit door and surrounding walls to be a "serious violation." The misuse of the foam and the intervention of an unforeseen and unforeseeable (to those who had no contact with the band) ignition of illegal pyrotechnics in The Station were the proximate

cause of the fire.[14]

In Splendorio, an asbestos inspector was hired prior to the demolition of a building to determine whether the building contained any asbestos. 682 A.2d at 463. The inspector certified, incorrectly, that the building did not contain asbestos. The building was demolished and the demolition company, in violation of the law, removed the debris to its own wrecking yard rather than to a licensed solid waste facility. It was then discovered that the building had, in fact, still contained asbestos when demolished. Id. The wrecking yard's neighbors, upon learning of the contaminated debris in their midst, sued various parties, including the negligent inspector, alleging diminished property values. Id. at 464. The Rhode Island Supreme Court held that the inspector was not bound to anticipate the demolition company's "unforeseeable and illegal superceding act." Id. at 467.

The Rhode Island Supreme Court has also determined on several occasions that certain intervening negligent acts of third persons are unforeseeable as a matter of law, and, therefore, break the chain of proximate causation flowing from a defendant's original negligent acts. For example, in Walsh v. Israel Couture Post, No. 2274 V.F.W., 542 A.2d 1094 (R.I. 1988), a member of the VFW Post fell and sustained injuries when he leaned against a railing that had become dislodged when struck by a truck owned by L.W. Fontaine Trucking Co. Id. at 1095. The Rhode Island Supreme Court held, as a matter of law, that the failure of the V.F.W. either to repair the damage or to post a warning for a period of nine days was not foreseeable to the trucking company and,

[14] Again, the State could not anticipate the illegal use of pyrotechnics at The Station because, among other factors, it was not the licensing authority for their use. Only the "local fire authority" can issue a permit to possess or display pyrotechnics. R.I.Gen. Laws § 23-28.11-3(a). Moreover, unlike other defendants, it had no contact with or control over the band that set up and ignited the fire.