**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| LINDA RODERIQUES, as Administratrix of the ESTATE OF DONALD RODERIQUES, individually, and as Mother and Next Friend to MANDI RODERIQUES, minor, | ) | |
| Plaintiffs, | ) | C.A. NO: 04-026 L |
| v. | ) | |
| JEFFREY DERDERIAN, et al., | ) | |
| Defendants. | ) | |

**MOTION OF CLEAR CHANNEL BROADCASTING, INC. AND CAPSTAR RADIO OPERATING COMPANY**
**TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Clear Channel Broadcasting, Inc. and Capstar Radio Operating Company (as successor in interest to WHJY, Inc., formerly a Rhode Island corporation that operated WHJY-FM) (hereinafter "the Clear Channel Defendants" or "Movants"), through their counsel, Edwards & Angell LLP and Reed Smith LLP, hereby move this Court, pursuant to Rules 12(b)(6) and 56(b) of the Federal Rules of Civil Procedure, for an Order dismissing the claims asserted against them in this matter or, in the alternative, for an Order entering judgment as a matter of law in their favor on such claims.

The allegations and claims that are the subject of this motion are set forth at the following paragraphs of the Complaint in this action: ¶¶ 23-24, 35-36, 191-198 (Count 40), 199-200 (Count 41), 201-202 (Count 42), 227-234 (Count 49), 235-236 (Count 50), 237-238 (Count 51).

84

In support of this motion, the Clear Channel Defendants incorporate by reference the following, which are filed on or about the same date hereof: (1) the Omnibus Statement of Undisputed Facts of the Clear Channel Defendants in Support of Their Alternative Motions for Summary Judgment; and, (2) the Omnibus Memorandum of the Clear Channel Defendants in Support of Their Motions to Dismiss or, In the Alternative, for Summary Judgment.

The Clear Channel Defendants

By their Attorneys,

Stephen M. Prignano (#3649)
Stephen J. MacGillivray (#5416)
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (fax)

James J. Restivo, Jr., Esq.
W. Thomas McGough, Jr., Esq.
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA 15219
(412) 288-3131
(412) 288-3063 (Fax)

Dated: September 29, 2004

**CERTIFICATION**

I, the undersigned, hereby certify that on the 30 day of September, 2004, I mailed a copy of the within MOTION OF CLEAR CHANNEL BROADCASTING, INC. AND CAPSTAR RADIO OPERATING COMPANY TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT by first-class mail, postage prepaid, to the following counsel of record:

Brian R. Cunha, Esq.
Karen A. Alegria, Esq.
Brian Cunha & Assoc.
904 Broadway
East Providence, RI 02914

Lauren D. Wilkins, Esq.
Ronald P. Langlois, Esq.
Smith & Brink, P.C.
One State Street
Suite 400
Providence, RI 02908

Anthony F. DeMarco, Esq.
Mark T. Reynolds, Esq.
Boyer, Reynolds & DeMarco, Ltd.
170 Westminster Street, Suite 200
Providence, RI 02903

Randall L. Souza, Esq.
Fred A. Kelly, Esq.
Nixon Peabody LLP
One Citizens Plaza, Suite 700
Providence, RI 02903

Daniel J. Horgan, Esq.
Horgan Law Offices
Shaw's Cove 5, Suite 200
New London, CT 06320

Michael T. Ryan, Esq.
Ryan, Ryan, Johnson & Deluca
80 Fourth Street
P.O. Box 3057
Stamford, CT 06905

James T. Murphy, Esq.
Hanson Curran LLP
146 Westminster Street
Providence, RI 02903-2218

Edwin F. McPherson, Esq.
McPherson & Kalmansohn
1801 Century Park East, 24th Floor
Los Angeles, CA 90067

Edward T. Hinchey, Esq.
James Scanlon, Esq.
Sloane & Walsh, LLP
Three Center Plaza
8th Floor
Boston, MA 02108

David B. Zabel, Esq.
Cohen & Wolf, P.C.
1115 Broad Street
P.O. Box 1821
Bridgeport, CT 06604

Ronald J. Resmini, Esq.
Resmini Law Offices, Ltd.
155 South Main Street
Providence, RI 02903

Gerald P. Dwyer, Jr., Esq.
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103

Ronald J. Creamer, Esq.
155 South Main Street
Suite 400
Providence, RI 02903

Carla Ottaviano, Esq.
Law Offices of DuBorg & Farrell
200 Glastonbury Boulevard, Suite 301
Glastonbury, CT 06033

Robert I. Reardon, Jr., Esq.
Robert I. Rimmer, Esq.
The Reardon Law Firm, P.C.
160 Hempstead Street
New London, CT 06320

Matthew F. Medeiros, Esq.
Little, Medeiros, Kinder Bulman & Whitney, P.C.
72 Pine Street, 5th Floor
Providence, RI 02903

Ralph J. Monaco, Esq.
Patrick J. Day, Esq.
Conway & Londregan, P.C..
38 Huntington Street
P.O. Box 1351
New London, CT 06320

Edward B. O'Connell, Jr., Esq.
Waller, Smith & Palmer, P.C.
51 Eugene O'Neill Drive
P.O. Box 88
New London, CT 06320

Bruce P. Keller, Esq.
Debovoise & Plimpton
919 Third Avenue
New York, NY 10022

James T. Murphy, Esq.
Megan J. Goguen, Esq.
Hanson Curran LLP
146 Westminster Street
Providence, RI 02903-2218

Faith A. LaSalle, Esq.
Law Offices of Faith LaSalle
One Turks Head Place
76 Westminster Street, Suite 1010
Providence, RI 02903

Scott J. Tucker, Esq.
Tucker, Heifetz & Saltzman
Three School Street
Boston, MA 02108

Mark K. Ostrowski, Esq.
Jose M. Rojas, Esq.
Shipman & Goodwin, LLP
One American Row
Hartford, CT 06103-2819

Donald J. Maroney, Esq.
146 Westminster Street
Suite 500
Providence, RI 02903

Allan B. Taylor, Esq.
Day, Berry & Howard
185 Asylum Street
City Place I
Hartford, CT 06103

Donald J. Maroney, Esq.
James H. Reilly, Esq.
Kelly, Kelleher, Reilly & Simpson
146 Westminster Street
Providence, RI 02903

Marc DeSisto, Esq.
DeSisto Law
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563

James R. Lee, Esq.
State of Rhode Island
Attorney General's Office
150 South Main Street
Providence, RI 02903

Joseph V. Cavanagh, Jr., Esq.
Kristin E. Rodgers, Esq.
Blish & Cavanagh
30 Exchange Terrace
Providence, RI 02903

James T. Murphy, Esq.
Kelly N. Michels, Esq.
Hanson Curran LLP
146 Westminster Street
Providence, RI 02903-2218

Edward M. Crane, Esq.
Deborah G. Solmor, Esq.
Skadden, Arps, Slate, Meagher & Flom
333 West Wacker Drive, Suite 2100
Chicago, IL 60606

Scott J. Tucker, Esq.
Tucker, Heifetz & Saltzman
Three School Street
Boston, MA 02108

Howard A. Merten, Esq.
Benjamin V. White, III, Esq.
Eric M. Sommers, Esq.
Veeter & White, Incorporated
20 Washington Place
Providence, RI 02903

Gerald C. DeMaria, Esq.
James A., Ruggieri, Esq.
Higgins, Cavanagh & Cooney
123 Dyer Street
Providence, RI 02903

Thomas C. Angelone, Esq.
Hodosh, Spinella & Angelone
One Turks Head Place
Suite 900
Providence, RI 02903

John R. Crockett, Esq.
Susan S. Wettle, Esq.
Carl A. Henlein, Esq.
Frost Brown Todd LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202-3363

Stefanie DiMaio Larivee, Esq.
215 Broadway
Providence, RI 02903

Mark T. Nugent, Esq.
Paul V. Sullivan, Esq.
Morrison, Mahoney & Miller
One Providence Washington Plaza
6th Floor
Providence, RI 02903

Daniel P. McKiernan, Esq.
146 Westminster Street
Providence, RI 02903

Joyce A. Faraone, Esq.
400 Reservoir Avenue
Suite 3G
Providence, RI 02907

Ann S. Sheeley, Esq.
Stephen Born, Esq.
Law Offices of Donald E. Green, P.C.
2235 Washington Street
Roxbury, MA 02119

James Howe, Esq.
215 Broadway
Providence, RI 02903

Stephen E. Breggia, Esq.
Breggia, Bowen & Grande
395 Smith Street
Providence, RI 02908

Eva Mancuso, Esq.
Hamel, Waxler, Allen & Collins
387 Atwells Avenue
Providence, RI 02909

William A. Filippo, Esq.
Steven A. Minicucci, Esq.
373 Elmwood Avenue
Providence, RI 02907

Donald A. Migliori, Esq.
Ness, Motley, Loadholt, Richardson & Poole
321 South Maine Street, Suite 402
Providence, RI 02903

Scott Hubbell, Esq.
Summers Law Office
P.O. Box 306
Franklin, MA 02038-0306

Oleg Nikolyszyn, Esq.
155 South Main Street
Suite 303
Providence, RI 02903

Mark S. Mandell, Esq.
Mandell, Schwartz & Boisclair
One Park Row
Providence, RI 02903

Christopher L. Russo, Esq.
888 Reservoir Avenue
Cranston, RI 02910

Charles N. Redihan, Jr., Esq.
Kiernan, Plunkett & Redihan
91 Friendship Street
Providence, RI 02903

Mark D. Tourgee, Esq.
Timothy A. Williamson, Esq.
Inman & Tourgee
1193 Tiogue Avenue
Coventry, RI 02816

Michael A. St. Pierre, Esq.
Revens, Revens & St. Pierre, P.C.
946 Centerville Road
Warwick, RI 02886

Max Wistow, Esq.
Wistow & Barylick
61 Weybosset Street
Providence, RI 02903

C. Russell Bengtson, Esq.
Carroll, Kelly & Murphy
One Turks Head Place, Suite 400
Providence, RI 02903

Patrick T. Jones, Esq.
Cooley Manion Jones, LLP
21 Custom House Street
Boston, MA 02110

Christopher C. Fallon, Jr., Esq.
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103-3508

Donna M. Lamontagne, Esq.
Zizik, Powers, O'Connell, Spaulding &
Lamontagne, P.C.
40 Westminster Street
Suite 201
Providence, RI 02903

Grant H. Miller, Jr., Esq.
Cynthia A. Jaworski, Esq.
Law Offices of Grant H. Miller, Jr.
55 Capital Boulevard, Suite 210
Rocky Hill, CT 06067

Steven A. Minicucci, Esq.
Calvino Law Associates
373 Elmwood Avenue
Providence, RI 02907

John J. Nazzaro, Esq.
Law Offices of John J. Nazzaro, LLC
164 Hempstead Street
New London, CT 06320

Richard W. MacAdams, Esq.
MacAdams & Wieck, Inc.
101 Dyer Street
Providence, RI 02903

Thomas W. Lyons, III, Esq.
Strauss, Factor & Lopes
403 South Main Street
Providence, RI 02903

Counsel for The Clear Channel Defendants

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| *In re* | C.A. No. 03-148L (Passa) |
| | C.A. No. 03-208L (Kingsley) |
| THE STATION NIGHTCLUB FIRE | C.A. No. 03-335L (Guindon) |
| | C.A. No. 03-483L (Henault) |
| | C.A. No. 04-26L (Roderiques) |
| | C.A. No. 04-56L (Sweet) |
| | C.A. No. 04-312L (Gray) |

**OMNIBUS STATEMENT OF UNDISPUTED FACTS**
**IN SUPPORT OF THE CLEAR CHANNEL DEFENDANTS'**
**ALTERNATIVE MOTIONS FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 12.1, Clear Channel Broadcasting, Inc. and Capstar Radio Operating Company (as successor in interest to WHJY, Inc., formerly a Rhode Island corporation that operated WHJY-FM) (collectively "the Clear Channel Defendants")[1] hereby

1 Clear Channel Communications, Inc. ("Communications") also has been named as a defendant in certain of these civil actions. However, it has no contacts with Rhode Island that would support this Court's exercise of personal jurisdiction over it. In light of that, several of the Plaintiffs who named Communications as a defendant have agreed to stipulate (without prejudice) to the removal or replacement of Communications as a party in their Complaints. To the extent that any Plaintiff has not so stipulated (or that such stipulation has not been filed), Communications separately shall file a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) in each civil action in which it remains a defendant. In the event that this Court would deny any such Rule 12(b)(2) motion filed on behalf of Communications, then Communications hereby joins with the Clear Channel Defendants in their Motions to Dismiss, or, in the Alternative, for Summary Judgment and in their Omnibus Memorandum in support thereof.

Additionally, some of the Complaints assert claims against "WHJY-FM," an alleged "corporation or other business organization formed under the laws of the State of Rhode Island." See, e.g., Kingsley v. Derderian, *et al.*, C.A. 03-208L, Complaint, ¶¶ 21, 44 (hereinafter "Kingsley"). WHJY-FM is not now, and never has been, a legal entity. Instead, it is a radio station that previously was operated by WHJY, Inc., a Rhode Island

Continued on following page

submit the following statement of undisputed facts in support of the alternative motions for summary judgment filed in each of the above-referenced lawsuits:

1. The lawsuits referenced above arise out of the February 20, 2003 fire at the West Warwick, Rhode Island nightclub formerly known as "The Station." Plaintiffs are individuals who allegedly were injured, or representatives of individuals who died, as a result of that fire. The Clear Channel defendants are among the entities and individuals named as defendants in those lawsuits. See, e.g., Gray, *et al.* v. Derderian, *et al.*, C.A. 04-312L, Complaint, ¶¶ 1-226, 395-409.

2. From time to time, The Station purchased commercial advertising time from a radio station known as WHJY-FM ("WHJY"). For the period January 29-31, 2003, The Station purchased a total of twelve air spots, each of which lasted sixty seconds. The commercial advertisement that was run on each such occasion during this timeframe was produced by WHJY pursuant to a script provided by The Station. A portion of this commercial advertisement related to a February 20, 2003 concert at The Station by a band known as "Great White." That portion provided as follows:

> February 20th . . . it's Great White . . . featuring Jack Russell . . . that's right--Great White--live in concert . . . February 20th . . . tickets now at Strawberries . . . the Station box office . . . and tickets.com.

Affidavit of Michele Maker Palmieri, attached hereto as Appendix A, at ¶ 2.

---

Continued from previous page

corporation. Through a series of mergers, Capstar Radio Operating Company is the successor-in-interest to WHJY, Inc. However, for ease of reference, and for purposes of this Omnibus Statement, as well as the related Motions and the Omnibus Memorandum, the term "Clear Channel Defendants" is defined to include "WHJY-FM," Capstar Radio Operating Company, as successor-in-interest to WHJY, Inc., Clear Channel Broadcasting, Inc., and (to the extent noted above) Clear Channel Communications, Inc.

3. The Station also purchased a total of 12 air spots, each of which lasted sixty seconds, during the period of February 12-14, 2003. The commercial advertisement that was run on each such occasion during this timeframe was produced by WHJY pursuant to a script provided by The Station. The portion of this commercial advertisement that related to the Great White concert provided as follows:

> Tickets still available for Great White--Thursday February 20th--Once Bitten Twice Shy . . . Rock Me . . . Save Your Love . . .all the hits from Great White--Thursday February 20th--at the Station in West Warwick . . . it's Great White--live in concert . . . February 20th . . . call 822-live--822-live for tickets.

Id. at ¶ 3.

4. At The Station's request, WHJY conducted on-air "give-aways" of tickets to the Great White concert. On the evenings of January 23, January 30, February 6 and February 13, 2003, one set of tickets (two tickets in each set) was given away pursuant to a call-in "contest" among WHJY listeners. The script that was read by the on-air personality for those ticket give-aways provided as follows:

> 94 HJY's "80's Fourplay" welcomes Great White live at The Station in West Warwick this/on Thursday, February 20th!
>
> Ninth Caller at 224-1994 scores a pair of free tickets!
>
> From the 80's Fourplay, Thursday nights at 8 PM on your home of Rock & Roll, 94 HJY!

Id. at ¶ 4.

5. Separately, WHJY agreed to support a promotion that also was scheduled at The Station for the evening of February 20, 2003. Id. at ¶ 5.

6. The support provided by WHJY for that promotion consisted of the following:

- The presence of the WHJY van in the proximity of The Station on the evening of the concert;
- Assistance in handing out promotional items at The Station;
- The periodic airing of commercial spots advertising the promotion; and
- Coordinating the appearance at the promotion of an on-air WHJY personality, Mike Gonsalves (a/k/a "The Doctor").

Id. at ¶ 6.

7. The commercials advertising the promotion were based on a script that provided as follows:

> This Thursday night, 94 HJY wants you to taste "Day Fresh Budweiser" -- bottled and delivered that same day!
>
> Try it this Thursday at The Station in West Warwick ... with "Great White" performing live!
>
> The Doctor is there, 'HJY and Budweiser will hook you up with prizes from 10-midnight.
>
> Think fresh, drink fresh with Budweiser, this Thursday night at The Station in West Warwick!

Id. at ¶ 7.

8. The commercials advertising the promotion aired periodically on WHJY during the period from February 17 to February 20, 2003. Id. at ¶ 8.

9. Finally, on February 19, 2003, the evening before the Great White concert at The Station nightclub, WHJY aired a live interview that Michael Gonsalves conducted with the lead singer of Great White, Jack Russell. Id. at ¶ 9.

10. With respect to the events at The Station on February 20, 2003:

- WHJY did not arrange for, did not pay for, and did not control any aspect of, the performance of Great White.
- WHJY did not share in any of the revenues from the performance of Great White on that evening, including any revenue from the sale of

tickets to Great White's performance, or The Station's sale of food or liquor.

- WHJY did not share in any of the expenses related to the performance of Great White on that evening, including any expenses related to security, police, The Station's employees, licenses, or permits.
- WHJY had no responsibility for controlling, and did not control, the number of patrons or individuals that were permitted access to The Station on that evening, the manner in which the stage was set up, the manner in which tables and chairs were arranged within The Station, or the scheduling of the performances.
- WHJY had no responsibility for controlling, and did not control, the bar or liquor sales at The Station.
- WHJY had no responsibility for controlling, and did not control, ingress, egress, safety, security, or fire protection of The Station or its patrons.
- WHJY had no responsibility for controlling, and did not control, the manner in which exit signs were posted, doors were hung, or soundproofing was selected for, The Station.
- WHJY had no responsibility for controlling, and did not control, any use of pyrotechnics by Great White.

Id. at ¶ 10.

11. WHJY had no right of possession or control over the premises comprising The Station. Id. at ¶ 11.

12. WHJY did not employ or control any representatives of The Station or Great White. Id. at ¶ 12.

The Clear Channel Defendants

By their Attorneys,

Stephen M. Prignano (#3649)
Stephen J. MacGillivray (#5416)
EDWARDS & ANGELL, LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (fax)

James J. Restivo, Jr., Esq.
W. Thomas McGough, Jr., Esq.
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA 15219
(412) 288-3131
(412) 288-3063 (Fax)

## CERTIFICATION

I, the undersigned, hereby certify that on the 30th day of September, 2004, I mailed a copy of the within **OMNIBUS STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THE CLEAR CHANNEL DEFENDANTS' ALTERNATIVE MOTIONS FOR SUMMARY JUDGMENT** by first-class mail, postage prepaid, to the following counsel of record:

Brian R. Cunha, Esq.
Karen A. Alegria, Esq.
Brian Cunha & Assoc.
904 Broadway
East Providence, RI 02914

Lauren D. Wilkins, Esq.
Ronald P. Langlois, Esq.
Smith & Brink, P.C.
One State Street
Suite 400
Providence, RI 02908

Anthony F. DeMarco, Esq.
Mark T. Reynolds, Esq.
Boyer, Reynolds & DeMarco, Ltd.
170 Westminster Street, Suite 200
Providence, RI 02903

Randall L. Souza, Esq.
Fred A. Kelly, Esq.
Nixon Peabody LLP
One Citizens Plaza, Suite 700
Providence, RI 02903

Daniel J. Horgan, Esq.
Horgan Law Offices
Shaw's Cove 5, Suite 200
New London, CT 06320

Michael T. Ryan, Esq.
Ryan, Ryan, Johnson & Deluca
80 Fourth Street
P.O. Box 3057
Stamford, CT 06905

James T. Murphy, Esq.
Hanson Curran LLP
146 Westminster Street
Providence, RI 02903-2218

Edwin F. McPherson, Esq.
McPherson & Kalmansohn
1801 Century Park East, 24th Floor
Los Angeles, CA 90067

Edward T. Hinchey, Esq.
James Scanlon, Esq.
Sloane & Walsh, LLP
Three Center Plaza
8th Floor
Boston, MA 02108

Ronald J. Resmini, Esq.
Resmini Law Offices, Ltd.
155 South Main Street
Providence, RI 02903

Ronald J. Creamer, Esq.
155 South Main Street
Suite 400
Providence, RI 02903

Robert I. Reardon, Jr., Esq.
Robert I. Rimmer, Esq.
The Reardon Law Firm, P.C.
160 Hempstead Street
New London, CT 06320

Ralph J. Monaco, Esq.
Patrick J. Day, Esq.
Conway & Londregan, P.C..
38 Huntington Street
P.O. Box 1351
New London, CT 06320

Bruce P. Keller, Esq.
Debovoise & Plimpton
919 Third Avenue
New York, NY 10022

Faith A. LaSalle, Esq.
Law Offices of Faith LaSalle
One Turks Head Place
76 Westminster Street, Suite 1010
Providence, RI 02903

David B. Zabel, Esq.
Cohen & Wolf, P.C.
1115 Broad Street
P.O. Box 1821
Bridgeport, CT 06604

Gerald P. Dwyer, Jr., Esq.
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103

Carla Ottaviano, Esq.
Law Offices of DuBorg & Farrell
200 Glastonbury Boulevard, Suite 301
Glastonbury, CT 06033

Matthew F. Medeiros, Esq.
Little, Medeiros, Kinder Bulman &
Whitney, P.C.
72 Pine Street, 5th Floor
Providence, RI 02903

Edward B. O'Connell, Jr., Esq.
Waller, Smith & Palmer, P.C.
51 Eugene O'Neill Drive
P.O. Box 88
New London, CT 06320

James T. Murphy, Esq.
Megan J. Goguen, Esq.
Hanson Curran LLP
146 Westminster Street
Providence, RI 02903-2218

Scott J. Tucker, Esq.
Tucker, Heifetz & Saltzman
Three School Street
Boston, MA 02108

Mark K. Ostrowski, Esq.
Jose M. Rojas, Esq.
Shipman & Goodwin, LLP
One American Row
Hartford, CT 06103-2819

Allan B. Taylor, Esq.
Day, Berry & Howard
185 Asylum Street
City Place I
Hartford, CT 06103

Marc DeSisto, Esq.
DeSisto Law
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563

Joseph V. Cavanagh, Jr., Esq.
Kristin E. Rodgers, Esq.
Blish & Cavanagh
30 Exchange Terrace
Providence, RI 02903

Edward M. Crane, Esq.
Deborah G. Solmor, Esq.
Skadden, Arps, Slate, Meagher & Flom
333 West Wacker Drive, Suite 2100
Chicago, IL 60606

Howard A. Merten, Esq.
Benjamin V. White, III, Esq.
Eric M. Sommers, Esq.
Veeter & White, Incorporated
20 Washington Place
Providence, RI 02903

Thomas C. Angelone, Esq.
Hodosh, Spinella & Angelone
One Turks Head Place
Suite 900
Providence, RI 02903

Donald J. Maroney, Esq.
146 Westminster Street
Suite 500
Providence, RI 02903

Donald J. Maroney, Esq.
James H. Reilly, Esq.
Kelly, Kelleher, Reilly & Simpson
146 Westminster Street
Providence, RI 02903

James R. Lee, Esq.
State of Rhode Island
Attorney General's Office
150 South Main Street
Providence, RI 02903

James T. Murphy, Esq.
Kelly N. Michels, Esq.
Hanson Curran LLP
146 Westminster Street
Providence, RI 02903-2218

Scott J. Tucker, Esq.
Tucker, Heifetz & Saltzman
Three School Street
Boston, MA 02108

Gerald C. DeMaria, Esq.
James A., Ruggieri, Esq.
Higgins, Cavanagh & Cooney
123 Dyer Street
Providence, RI 02903

John R. Crockett, Esq.
Susan S. Wettle, Esq.
Carl A. Henlein, Esq.
Frost Brown Todd LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202-3363

Stefanie DiMaio Larivee, Esq.
215 Broadway
Providence, RI 02903

Mark T. Nugent, Esq.
Paul V. Sullivan, Esq.
Morrison, Mahoney & Miller
One Providence Washington Plaza
6th Floor
Providence, RI 02903

Daniel P. McKiernan, Esq.
146 Westminster Street
Providence, RI 02903

Joyce A. Faraone, Esq.
400 Reservoir Avenue
Suite 3G
Providence, RI 02907

Ann S. Sheeley, Esq.
Stephen Born, Esq.
Law Offices of Donald E. Green, P.C.
2235 Washington Street
Roxbury, MA 02119

James Howe, Esq.
215 Broadway
Providence, RI 02903

Stephen E. Breggia, Esq.
Breggia, Bowen & Grande
395 Smith Street
Providence, RI 02908

Eva Mancuso, Esq.
Hamel, Waxler, Allen & Collins
387 Atwells Avenue
Providence, RI 02909

William A. Filippo, Esq.
Steven A. Minicucci, Esq.
373 Elmwood Avenue
Providence, RI 02907

Donald A. Migliori, Esq.
Ness, Motley, Loadholt, Richardson & Poole
321 South Maine Street, Suite 402
Providence, RI 02903

Scott Hubbell, Esq.
Summers Law Office
P.O. Box 306
Franklin, MA 02038-0306

Oleg Nikolyszyn, Esq.
155 South Main Street
Suite 303
Providence, RI 02903

Mark S. Mandell, Esq.
Mandell, Schwartz & Boisclair
One Park Row
Providence, RI 02903

Christopher L. Russo, Esq.
888 Reservoir Avenue
Cranston, RI 02910

Charles N. Redihan, Jr., Esq.
Kiernan, Plunkett & Redihan
91 Friendship Street
Providence, RI 02903

Mark D. Tourgee, Esq.
Timothy A. Williamson, Esq.
Inman & Tourgee
1193 Tiogue Avenue
Coventry, RI 02816

Michael A. St. Pierre, Esq.
Revens, Revens & St. Pierre, P.C.
946 Centerville Road
Warwick, RI 02886

Max Wistow, Esq.
Wistow & Barylick
61 Weybosset Street
Providence, RI 02903

C. Russell Bengtson, Esq.
Carroll, Kelly & Murphy
One Turks Head Place, Suite 400
Providence, RI 02903

Patrick T. Jones, Esq.
Cooley Manion Jones, LLP
21 Custom House Street
Boston, MA 02110

Christopher C. Fallon, Jr., Esq.
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103-3508

Donna M. Lamontagne, Esq.
Zizik, Powers, O'Connell, Spaulding &
Lamontagne, P.C.
40 Westminster Street
Suite 201
Providence, RI 02903

Grant H. Miller, Jr., Esq.
Cynthia A. Jaworski, Esq.
Law Offices of Grant H. Miller, Jr.
55 Capital Boulevard, Suite 210
Rocky Hill, CT 06067

Steven A. Minicucci, Esq.
Calvino Law Associates
373 Elmwood Avenue
Providence, RI 02907

John J. Nazzaro, Esq.
Law Offices of John J. Nazzaro, LLC
164 Hempstead Street
New London, CT 06320

Richard W. MacAdams, Esq.
MacAdams & Wieck, Inc.
101 Dyer Street
Providence, RI 02903

Thomas W. Lyons, III, Esq.
Strauss, Factor & Lopes
403 South Main Street
Providence, RI 02903

Counsel for The Clear Channel Defendants

# AFFIDAVIT OF MICHELE MAKER PALMIERI

STATE OF RHODE ISLAND )
) ss:
COUNTY OF PROVIDENCE )

Michele Maker Palmieri, being first duly sworn upon her oath, deposes and states that she has personal knowledge of the following facts and, if called to testify, would state as follows:

1. I am, and at all times material hereto have been, the Director of Marketing and Promotions for the radio station known as WHJY-FM ("WHJY").

2. From time to time, The Station, a West Warwick, Rhode Island nightclub, purchased commercial advertising time from WHJY. For the period January 29-31, 2003, The Station purchased a total of twelve air spots, each of which lasted sixty seconds. The commercial advertisement that was run on each such occasion during this timeframe was produced by WHJY pursuant to a script provided by The Station. A portion of this commercial advertisement related to a February 20, 2003 concert at The Station by a band known as "Great White." That portion provided as follows:

> February 20th . . . it's Great White . . . featuring Jack Russell . . . that's right--Great White--live in concert . . . February 20th . . . tickets now at Strawberries . . . the Station box office . . . and tickets.com.

3. The Station also purchased a total of 12 air spots, each of which lasted sixty seconds, during the period of February 12-14, 2003. The commercial advertisement that was run on each such occasion during this timeframe was produced by WHJY pursuant to a script provided by The Station. The portion of this commercial advertisement that related to the Great White concert provided as follows:

> Tickets still available for Great White--Thursday February 20th--Once Bitten Twice Shy . . . Rock Me . . . Save Your Love . . .all the hits from Great White--Thursday February 20th--at the Station in West Warwick . . .

> it's Great White--live in concert . . . February 20th . . . call 822-live--822-live for tickets.

4. At The Station's request, WHJY conducted on-air "give-aways" of tickets to the Great White concert. On the evenings of January 23 and January 30, and February 6 and 13, 2003, a single set of tickets (two tickets in each set) was given away pursuant to a call-in "contest" among WHJY listeners. The script that was read by the on-air personality for those ticket give-aways provided as follows:

> 94 HJY's "80's Fourplay" welcomes Great White live at The Station in West Warwick this/on Thursday, February 20th!
>
> Ninth Caller at 224-1994 scores a pair of free tickets!
>
> From the 80's Fourplay, Thursday nights at 8 PM on your home of Rock & Roll, 94 HJY!

5. Separately, WHJY agreed to support a promotion that also was scheduled at The Station for the evening of February 20, 2003.

6. The support provided by WHJY for that promotion consisted of the following:

- The presence of the WHJY van in the proximity of The Station on the evening of the concert;
- Assistance in handing out promotional items at The Station;
- The periodic airing of commercial spots advertising the promotion; and
- Coordinating the appearance at the promotion of an on-air WHJY personality, Mike Gonsalves (a/k/a "The Doctor").

7. The commercials advertising the promotion were based on a script that provided as follows:

> This Thursday night, 94 HJY wants you to taste "Day Fresh Budweiser" -- bottled and delivered that same day!

Try it this Thursday at The Station in West Warwick ... with "Great White" performing live!

The Doctor is there, 'HJY and Budweiser will hook you up with prizes from 10-midnight.

Think fresh, drink fresh with Budweiser, this Thursday night at The Station in West Warwick!

8. The commercials advertising the promotion aired periodically on WHJY during the period from February 17 to February 20, 2003.

9. Finally, I am aware that, on February 19, 2003, the evening before the Great White concert at The Station nightclub, WHJY aired a live interview that Michael Gonsalves conducted with the lead singer of Great White, Jack Russell.

10. With respect to the events at The Station on the evening of February 20, 2003:

- WHJY did not arrange for, did not pay for, and did not control any aspect of, the performance of Great White.
- WHJY did not share in any of the revenues from the performance of Great White on that evening, including any revenue from the sale of tickets to Great White's performance, or The Station's sale of food or liquor.
- WHJY did not share in any of the expenses related to the performance of Great White on that evening, including any expenses related to security, police, The Station's employees, licenses, or permits.
- WHJY had no responsibility for controlling, and did not control, the number of patrons or individuals that were permitted access to The Station on that evening, the manner in which the stage was set up, the manner in which tables and chairs were arranged within The Station, or the scheduling of the performances.
- WHJY had no responsibility for controlling, and did not control, the bar or liquor sales at The Station.
- WHJY had no responsibility for controlling, and did not control, ingress, egress, safety, security, or fire protection of The Station or its patrons.

- WHJY had no responsibility for controlling, and did not control, the manner in which exit signs were posted, doors were hung, or soundproofing was selected for, The Station.

- WHJY had no responsibility for controlling, and did not control, any use of pyrotechnics by Great White.

11. WHJY had no right of possession or control over the premises comprising The Station.

12. WHJY did not employ or control any representatives of The Station or Great White.

Dated: September 24, 2004
Providence, Rhode Island

[signature]
Michele Maker Palmieri

Sworn and subscribed to before
me this 24th day of September, 2004.

[signature]
Notary Public

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| *In re* | C.A. No. 03-148L (Passa) |
| THE STATION NIGHTCLUB FIRE | C.A. No. 03-208L (Kingsley) |
| | C.A. No. 03-335L (Guindon) |
| | C.A. No. 03-483L (Henault) |
| | C.A. No. 04-26L (Roderiques) |
| | C.A. No. 04-56L (Sweet) |
| | C.A. No. 04-312L (Gray) |

**OMNIBUS MEMORANDUM OF THE CLEAR CHANNEL DEFENDANTS IN SUPPORT OF THEIR MOTIONS TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT***

James J. Restivo, Jr., Esq.
W. Thomas McGough, Jr., Esq.

REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA 15219
(412) 288-3131
(Fax) (412) 288-3063

Stephen M. Prignano, Esq.
Stephen J. MacGillivray, Esq.

EDWARDS & ANGELL LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(Fax) (401) 276-6611

* This Omnibus Memorandum is filed in support of each of the Motions to Dismiss or, in the Alternative, for Summary Judgment that have been filed in the above-numbered civil actions by the Clear Channel Defendants on the same date hereof. Although a separate copy of this Omnibus Memorandum has been filed in each of the foregoing civil actions together with the related Motion, only one copy of this Omnibus Memorandum will be served upon each of the parties appearing on the Official Service List for each of said civil actions.

# TABLE OF CONTENTS

Table of Authorities ..... ii

I. INTRODUCTION ..... 1

II. THE PLAINTIFFS' ALLEGATIONS ..... 3

III. ARGUMENT ..... 7

A. THE MOTION TO DISMISS SHOULD BE GRANTED BECAUSE THE COMPLAINTS DO NOT ALLEGE FACTUAL PREDICATES FOR ANY DUTY OWED BY THE CLEAR CHANNEL DEFENDANTS. ..... 7

1. Marketing That Does Not Incite Immediate Harmful Conduct Is Constitutionally Protected And Therefore Not Actionable. ..... 10

2. Sponsorship, Absent Control, Does Not Give Rise To A Duty Of Care Or To Liability In Tort. ..... 12

3. Absent Control, There Is No "Joint Enterprise" Or "Joint Venture." ..... 22

4. The Statutory Noncompliance Claims Are Not Actionable As To The Clear Channel Defendants. ..... 26

B. ALTERNATIVELY, THE CLEAR CHANNEL DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THEY DID NOT CONTROL ANY OF THE INSTRUMENTALITIES THAT CAUSED OR CONTRIBUTED TO THE PLAINTIFFS' ALLEGED INJURIES. ..... 29

IV. CONCLUSION ..... 32

# TABLE OF AUTHORITIES

## *CASES*


Archer v. Outboard Marine Corp., 908 S.W.2d 701 (Mo. Ct. App. 1995) ........ 24-25

Baker v. Mid Maine Med. Ctr., 499 A.2d 464 (Me. 1985) ........ 18

Bandoni v. State, 715 A.2d 580 (R.I. 1998) ........ 13, 29

Banks v. Bowen's Landing Corp., 522 A.2d 1222 (R.I. 1987) ........ 14

Berner v. Delahanty, 129 F.3d 20 (1st Cir. 1997) ........ 7

Bill v. Superior Court, 187 Cal. Rptr. 625 (Ct. App. 1982) ........ 12

Brandenburg v. Ohio, 395 U.S. 444 (1969) ........ 11

Canney v. City of Chelsea, 925 F. Supp. 58 (D. Mass. 1996) ........ 9

Carroll v. Yeaw, 850 A.2d 90 (R.I. 2004) ........ 13-14, 18-19, 21

C.B. Trucking, Inc. v. Waste Mgmt., Inc., 137 F.3d 41 (1st Cir. 1998) ........ 30, 31

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ........ 29

Collier v. City of Chicopee, 158 F.3d 601 (1st Cir. 1998) ........ 30

Conley v. Gibson, 355 U.S. 41 (1957) ........ 7

Davidson v. Time Warner, Inc., No. Civ.A.V-94-006, 1997 WL 405907 (S.D. Tex. Mar. 31, 1997) ........ 11

Day v. Fallon Cmty. Health Plan, Inc., 917 F. Supp. 72 (D. Mass. 1986) ........ 26

DeFilippo v. National Broadcasting Co., 446 A.2d 1036 (R.I. 1982) ........ 10-11, 12

DM Research, Inc. v. College of Am. Pathologists, 170 F. 3d 53 (1st Cir. 1999) ........ 2, 7, 8-9, 14

DM Research, Inc. v. College of Am. Pathologists, 2 F. Supp. 2d 226 (D.R.I. 1998) ........ 7, 9

Esfahani v. Five Star Prods., Inc., No. A-97-1246, 1999 WL 273996 (Neb. Ct. App. May 4, 1999) ........ 17

Farrar v. Edgewood Yacht Club, 302 A.2d 782 (R.I. 1973) ........ 22

Ferreira v. Strack, 652 A.2d 965 (R.I. 1995) ........ 13

Ferreira v. Strack, 636 A.2d 682 (R.I. 1994) .......... 13

Fireman's Fund Ins. Co. v. E.W. Burman, Inc., 391 A.2d 99 (R.I. 1975) .......... 22-23

Fjerstad v. Heartland Racing Ass'n, Inc., 563 N.W.2d 87 (Minn. Ct. App. 1997) .......... 17

Gehling v. St. George's Univ. Sch. of Med., Ltd., 705 F. Supp. 761 (E.D.N.Y. 1989) .......... 16

Gibbons v. County Legislature, Oswego County, 556 N.Y.S.2d 428 (App. Div. 1990) .......... 16, 21

Gooley v. Mobil Oil Corp., 851 F.2d 513 (1st Cir. 1988) .......... 7

Gragg v. Wichita State Univ., 934 P.2d 121 (Kan. 1997) .......... 16

Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35 (1st Cir. 2004) .......... 30

Hebert v. St. Paul Fire & Marine Ins. Cos., 757 So.2d 814 (La. Ct. App. 2000) .......... 17

Jenkins v. McKeithen, 395 U.S. 411 (1969) .......... 7

Kuzniar v. Keach, 709 A.2d 1050 (R.I. 1998) .......... 13-14

Lambert v. Pepsico, Inc., 698 So.2d 1031 (La. Ct. App. 1997) .......... 17, 21

Landvik v. Herbert, 936 P.2d 697 (Idaho Ct. App. 1997) .......... 17

Liu v. Striuli, 36 F. Supp. 2d 452 (D.R.I. 1999) .......... 13

Lopresti v. City of Malden, No. CA9801459, 2001 WL 716902 (Mass. Ct. App. April 26, 2001) .......... 16-17, 20

McAleer v. Smith, 57 F.3d 109 (1st Cir. 1995) .......... 23

McAleer v. Smith, 860 F. Supp. 924 (D.R.I. 1994) .......... 20-21, 23

McCarthy v. Northwest Airlines, Inc., 56 F.3d 313 (1st Cir. 1995) .......... 30

McCollum v. Columbia Broadcasting System, 249 Cal. Rptr. 187 (Ct. App. 1988) .......... 11-12

McGrath v. United Hosp., 562 N.Y.S.2d 193 (App. Div. 1990) .......... 16, 20

Megna v. Newsday, Inc., 666 N.Y.S.2d 718 (App. Div. 1997) .......... 16

Mercer v. City of New York, 679 N.Y.S.2d 694 (App. Div. 1998) .......... 16, 21

Mongello v. Davos Ski Resort, 638 N.Y.S.2d 166 (App. Div. 1996) .......... 16

Morrarty v. Reali, 219 A.2d 404 (R.I. 1966) .......... 22

Moseley v. Fitzgerald, 773 A.2d 254 (R.I. 2001) ........ 27-28

Murphy v. Murphy, 471 A.2d 619 (R.I. 1984) ........ 27

New York Times Co. v. Sullivan, 376 U.S. 254 (1964) ........ 10

Oliveira v. Lombardi, 794 A.2d 453 (R.I. 2002) ........ 27, 28

Olivia N. v. National Broadcasting Co., 178 Cal. Rptr. 888 (Ct. App. 1981) ........ 11

O'Sullivan v. Hemisphere Broad. Corp., 520 N.E.2d 1301 (Mass. 1988) ........ 24

Panaras v. Liquid Carbonic Indus., Inc., 74 F.3d 786 (7th Cir. 1996) ........ 9

Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988) ........ 30-31

Previs v. Spano, No. CV-950327537S, 1998 WL 142460 (Conn. Ct. App. March 20, 1998) ........ 16

Rhode Island Fed. of Teachers, AFT, AFL-CIO v. Sundlun, 595 A.2d 799 (R.I. 1991) ........ 29

Ricard v. Roseland Amusement & Dev. Corp., 626 N.Y.S.2d 186 (App. Div. 1995) ........ 17

Salmeron v. Nava, 694 A.2d 709 (R.I. 1997) ........ 22-24

Smith v. West Rochelle Travel Agency, Inc., 656 N.Y.S.2d 340 (App. Div. 1997) ........ 17, 21

Sroka v. Halliday, 97 A. 965 (R.I. 1916) ........ 17-18

Swajian v. General Motors Corp., 559 A.2d 1041 (R.I. 1989) ........ 13

Triplex Comms., Inc. v. Riley, 900 S.W.2d 716 (Tex. 1995) ........ 24

United States ex rel. Kneepkins v. Gambro Healthcare, Inc., 115 F. Supp. 2d 35 (D. Mass. 2000) ........ 9

Vogel v. West Mountain Corp., 470 N.Y.S.2d 475 (App. Div. 1983) ........ 15-16, 19-20, 21

Walt Disney Prods., Inc. v. Shannon, 276 S.E.2d 580 (Ga. 1981) ........ 12

Weirum v. RKO Gen., Inc., 539 P.2d 36 (Cal. 1975) ........ 18

Yakubowicz v. Paramount Pictures Corp., 536 N.E.2d 1067 (Mass. 1989) ........ 12

Zamora v. Columbia Broadcasting System, 480 F. Supp. 199 (S.D. Fla. 1979) ........ 11

Zarrelli v. Barnum Festival Soc'y, Inc., 505 A.2d 25 (Conn. Ct. App. 1986) ........ 17, 21

***CONSTITUTIONAL PROVISIONS***


U.S. Const. amend. I ........................................ 10


***STATUTES***


R.I. Gen. Laws § 23-28.6-2 ........................................ 26-27

R.I. Gen. Laws § 23-28.6-13 ........................................ 27-28

R.I. Gen. Laws § 23-28.6-15 ........................................ 27-28

R.I. Gen. Laws § 23-28.11-3 ........................................ 27, 28

2003 R.I. Laws Ch. 06-106, § 28-28.6-2(b) ........................................ 26


***RULES***


Fed. R. Civ. P. 12(b) ........................................ 29

Fed. R. Civ. P. 12(b)(6) ........................................ 2

Fed. R. Civ. P. 56 ........................................ 2, 29, 30

Local Rule 12.1 ........................................ 2


***PERIODICALS***


Tracy Breton, Station Fire Lawsuit Names 46 Defendants,
Providence Journal, July 23, 2004 ........................................ 31

## I. INTRODUCTION

WHJY-FM, WHJY, Inc. and/or Clear Channel Broadcasting, Inc. (collectively the "Clear Channel Defendants") have been named as defendants in the above-captioned actions,[1] all of which arise out of the tragic events that transpired on February 20, 2003 during a concert featuring the band Great White at The Station nightclub in West Warwick, Rhode Island. At approximately 11:10 p.m. on that evening, as Great White began its performance, pyrotechnic devices on the stage ignited a fire that swept through the nightclub, killing 100 people and injuring more than 180 others. Plaintiffs are those allegedly injured in that fire, their survivors and relatives, or the representatives of those killed.

---

1 Clear Channel Communications, Inc. ("Communications") also has been named as a defendant in certain of these civil actions. However, it has no contacts with Rhode Island that would support this Court's exercise of personal jurisdiction over it. In light of that, several of the Plaintiffs who named Communications as a defendant have agreed to stipulate (without prejudice) to the removal or replacement of Communications as a party in their Complaints. However, to the extent that any Plaintiff has not so stipulated (or that such stipulation has not been filed), Communications separately shall file a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) in each civil action in which it remains a defendant. In the event that this Court would deny any such Rule 12(b)(2) motion filed on behalf of Communications, Communications joins with the Clear Channel Defendants in their Motions to Dismiss or, in the Alternative, for Summary Judgment, the Omnibus Statement of Undisputed Facts in Support of the Clear Channel Defendants' Alternative Motions for Summary Judgment (hereinafter the "Omnibus Statement of Undisputed Facts"), and this Omnibus Memorandum.

Additionally, some of the Complaints assert claims against "WHJY-FM," an alleged "corporation or other business organization formed under the laws of the State of Rhode Island." See, e.g., Kingsley v. Derderian, *et al.*, C.A. 03-208L, Complaint, ¶¶ 21, 44 (hereinafter "Kingsley"). WHJY-FM is not now, and never has been, a legal entity. Instead, it is a radio station that previously was operated by WHJY, Inc., a Rhode Island corporation. Through a series of mergers, Capstar Radio Operating Company is the successor-in-interest to WHJY, Inc. However, for ease of reference, and for purposes of this Omnibus Memorandum, the related Motions and the Omnibus Statement of Undisputed Facts, the term "Clear Channel Defendants" is defined to include "WHJY-FM," Capstar Radio Operating Company, as successor-in-interest to WHJY, Inc., Clear Channel Broadcasting, Inc., and (to the extent noted above) Clear Channel Communications, Inc.

A tragedy of this magnitude predictably and commendably triggers wide-ranging efforts to determine cause and to assign responsibility. Just as predictably, but less commendably, some of those efforts strive to blame people or entities with absolutely no causal link to the tragedy, but who are perceived as having economic resources that might be captured to aid the victims.

So it is here with the Clear Channel Defendants. As will be shown, none of the Complaints set forth allegations from which a court could conclude that these entities had any duty -- or even any right -- to control anything causally connected to the fire. Instead, these Complaints allege in conclusory fashion that the Clear Channel Defendants "sponsored" or "promoted" the event, "should have known" certain alleged facts about the event, or were engaged in a "joint enterprise" or "joint venture" with other defendants -- concepts that in reality are not factual averments, but rather legal conclusions.

Under the auspices of Rule 12(b)(6), this Court can push past the broad generalities and intentional obscurities in these Complaints and consider whether they allege "a *factual* predicate concrete enough to warrant further proceedings" against the Clear Channel Defendants. See DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) (emphasis in original). In the alternative, this Court may consider the admitted or verified facts offered by the Clear Channel Defendants in their accompanying Omnibus Statement of Undisputed Facts and conclude, under Rule 56(c), that there is no genuine issue as to any material fact regarding their alleged responsibility for this tragedy, and that they are therefore entitled -- even at this early juncture -- to judgment as a matter of law. See Fed. R. Civ. P. 12(b), 56; L.R. 12.1.

## II. THE PLAINTIFFS' ALLEGATIONS

Each of the Complaints at issue describes at some length the tragic evening of February 20, 2003, at The Station nightclub.[2] Allegations that would affix legal responsibility upon the Clear Channel Defendants for those events are, however, quite sparse and fall into four general categories.

**First**, all of the Complaints describe one or more of the Clear Channel Defendants as a "sponsor," "promoter," or "presenter" of the Great White concert, in that they advertised, marketed or promoted the concert in some way. Thus, for example, the Kingsley Complaint alleges:

> 28. At some point before February 20, 2003, [the Clear Channel Defendants], Defendant Anheuser Busch, Inc., and Defendant McLaughlin & Moran, Inc. entered into sponsorship agreements with Defendants, Jeffrey Derderian, Michael Derderian, and/or DERCO or Defendants Knight Records, Inc., Manic Music Management, and/or Paul Woolnough, as agent for the band Great White whereby Defendants WHJY-FM, Anheuser Busch, Inc., or McLaughlin & Moran, Inc., would be sponsors of the Great White concert at the Station on February 20, 2003.
>
> * * *
>
> 30. As part of their sponsorship of the concert, Defendant WHJY-FM . . . was the "presenter" of the evening. The on-stage host of the night's entertainment was the late Michael Gonsalves (who also perished in the fire), a WHJY-FM disc jockey popularly known as "Doctor Metal." WHJY-FM also had a number of interns who distributed promotional items of WHJY-FM to the crowd.

---

2 See Kingsley, ¶¶ 29, 32, 34-43; Passa, *et al.* v. Derderian, *et al.*, C.A. 03-148L, Second Amended Complaint, ¶¶ 54-58, 60-61 (hereinafter "Passa"); Guindon, *et al.* v. American Foam Corp., *et al.*, C.A. 03-335L, Complaint, ¶¶ 54-72 (hereinafter "Guindon"); Estate of Henault v. Derderian, *et al.*, C.A. 03-483L, Second Amended Complaint, ¶¶ 74-81, 83-86 (hereinafter "Henault"); Roderiques, *et al.* v. American Foam Corp., *et al.*, C.A. 04-26L, Complaint, ¶¶ 38, 40-43 (hereinafter "Roderiques"); Sweet, *et al.* v. American Foam Corp., *et al.*, C.A. 04-56L, Complaint, ¶¶ 38, 40-43 (hereinafter "Sweet"); Gray, *et al.* v. Derderian, *et al.*, C.A. 04-312L, Complaint, ¶ 271 (hereinafter "Gray").

This alleged advertising, marketing or promotion, by itself, supposedly imposes liability on the Clear Channel Defendants. The Kingsley Complaint thus asserts:

> 81. The liability of [the Clear Channel] Defendants . . . is established by their sponsorship of and marketing efforts at the Great White concert at The Station on February 20, 2003 by their agents, servants, or employees, from which [the Clear Channel Defendants] stood to profit, whether monetarily or in increased awareness of its brand.

Each of the six other Complaints contains similar allegations or theories as to the Clear Channel Defendants.[3]

**Second**, all of the Complaints attempt to couple the Clear Channel Defendants' supposed advertisement, marketing or promotion of the concert with other alleged actions, inactions, knowledge or notice to create liability. Thus, according to the Complaints, the Clear Channel Defendants should be found liable, as sponsors or promoters, because they:

a) "negligently contribut[ed] to the unlawful overcrowding" of the nightclub;[4]

b) "knew or should have known [that the Great White performance] would begin with the setting off of illegal pyrotechnics before a proximate audience;"[5]

c) "allowed the use of pyrotechnics at the night-club by persons without the proper permits;"[6] and/or

d) "failed to properly inspect The Station night-club to determine its suitability for use of pyrotechnics."[7]

---

3 See Passa, ¶ 133; Guindon, ¶ 51; Henault, ¶ 71; Roderiques, ¶ 36; Sweet, ¶ 36; Gray, ¶ 400.

4 Guindon, ¶ 51; Henault, ¶ 71; Roderiques, ¶ 36; Sweet, ¶ 36.

5 Gray,¶ 398.

6 Guindon, ¶ 240(d); Henault, ¶ 162 (d); Roderiques, ¶ 194(d); Sweet, ¶ 168(d).

7 Guindon,¶ 240(h); Henault, ¶ 162(h); Roderiques, ¶ 194(h); Sweet, ¶ 168(h).

**Third**, several of the Complaints allege a "joint enterprise" or "joint venture" between and among the Clear Channel Defendants and other defendants, thereby supposedly imposing some sort of joint responsibility for each other's actions or inactions. Thus, for example, the Passa Complaint alleges:

> 63. Certain Defendants, known and unknown, participated in a joint enterprise in concert with each other in their co-promotions and/or mutual association for profit and gain by the tangible or intangible, monetary or [sic] enhancement of their brand names and good will. Each of the joint tortfeasor Defendants, individually and/or collectively, negligently failed to control the capacity at The Station breaching their obligation to foresee emergency situations as well as failing to comply with examining fire exits consistent with Rhode Island General Laws, Section 23-28.6-2 and other statutory requirements for safety. As joint tortfeasors, the negligence of each by imputation becomes the negligence of all. As joint tortfeasors, they are responsible individually and collectively with the remaining non-joint tortfeasor defendants under the theory of joint and several liability to include yet unnamed John Does. Said joint tortfeasor Defendants as enumerated above include Defendants, Jeffrey Derderian, Michael Derderian, DERCO LLC, Shell Oil Company, Motiva Enterprises LLC, Manic Music Management, Inc., Jack Russell, Mark Kendall, David Filice, Eric Powers, Daniel Bichele, Paul Woolnough, Knight Records, Inc., Anheuser-Busch Inc., Anheuser-Busch Companies Inc., Shell Oil Company d/b/a Motiva Enterprises LLC, McLaughlin and Moran, Inc., WHJY, INC., Clear Channel Broadcasting, Inc. . . .

**Finally**, several of the Complaints suggest that the Clear Channel Defendants are liable due to their alleged failure to comply with various Rhode Island statutes governing the inspection and condition of places of assembly and the use and handling of pyrotechnics.[8]

None of these four theories of liability -- marketing, sponsorship, joint enterprise/joint venture, or statutory noncompliance -- withstand legal scrutiny, because each set of allegations lacks at least one essential element. In the case of the "marketing" claims, none of the plaintiffs allege, or can allege, that radio advertisements by the Clear Channel Defendants incited anyone to engage in immediately harmful conduct. Absent such incitement, the First

---

8 See Passa, ¶¶ 63, 135; Guindon, ¶¶ 240(c), (d), 279(b)-(e); Henault, ¶¶ 162(c), (d), 174(b)-(e); Roderiques, ¶¶ 194(c), (d), 230(b)-(e); Sweet, ¶¶ 168(c)-(d), 197(b)-(e).

Amendment forecloses the imposition of liability based on marketing or promotional speech. See pp. 10-12, infra.

In the case of the "sponsorship" claims, none of the Complaints allege, or can allege, that the Clear Channel Defendants had any control over, or the right to control, any instrumentality that was causally related to the fire. Without such control, a sponsor or promoter owes no legal duty, and has no liability, to persons injured at an event like the Great White concert. See pp. 12-22, infra.

Similarly, in the case of the "joint enterprise" or "joint venture" claims, the Complaints fail to allege, and cannot allege, that the Clear Channel Defendants had equal authority with the other alleged joint enterprisers to control the means of executing the supposed joint purpose. Absent such authority and control, no vicarious liability can be imposed on the Clear Channel Defendants for the alleged actions of their co-defendants. See pp. 22-26, infra.

Finally, in the case of the "statutory noncompliance" claims, the Complaints fail to allege, and cannot allege, that any of the Clear Channel Defendants was the "owner or manager" of, or otherwise had any control over, the premises of The Station nightclub, or that they stored, handled, transported, displayed or possessed any fireworks or pyrotechnics. As such, the Clear Channel Defendants are not subject to the statutes upon which such "statutory noncompliance" claims are based. See pp. 26-29, infra.

This Omnibus Memorandum first will examine the scope of this Court's review of these Complaints under Rule 12(b)(6). It then will describe the legal insufficiency of each of the four theories of liability advanced in the Complaints against the Clear Channel Defendants. In doing so, this Omnibus Memorandum will demonstrate that all of the Complaints should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, because none of

them state a claim against any of the Clear Channel Defendants upon which relief can be granted.

In the alternative, and in the final section of this Omnibus Memorandum, the Clear Channel Defendants will turn to their Motion for Summary Judgment, and -- with reference to verified matters outside the current pleadings -- will demonstrate, as a matter of law, that Plaintiffs not only fail to allege sufficient facts to support their claims against the Clear Channel Defendants, but that they **cannot** allege such facts.

## III. ARGUMENT

### A. THE MOTION TO DISMISS SHOULD BE GRANTED BECAUSE THE COMPLAINTS DO NOT ALLEGE FACTUAL PREDICATES FOR ANY DUTY OWED BY THE CLEAR CHANNEL DEFENDANTS.

A complaint ordinarily will not be dismissed for failure to state a claim under Rule 12(b)(6) unless it appears beyond all doubt that the plaintiffs can prove no set of facts that would entitle them to relief. See, e.g., Conley v. Gibson, 355 U.S. 41, 45-46 (1957). All factual allegations must be accepted as true and in the light most favorable to the plaintiff. See, e.g., Jenkins v. McKeithen, 395 U.S. 411, 421-22 (1969).

But while averments of fact must be accepted as alleged, courts are not obligated to accept as true "[b]ald assertions, subjective characterizations and legal conclusions." DM Research, Inc. v. College of Am. Pathologists, 2 F. Supp. 2d 226, 228 (D.R.I. 1998), aff'd, 170 F.3d 53 (lst Cir. 1999); see also Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) ("'bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, [and] outright vituperation' carry no weight" in deciding a Rule 12(b)(6) motion). The factual allegations instead "must be specific enough to justify "drag[ging] a defendant past the pleading threshold." Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)).

In elaborating upon the concept of a "pleading threshold," the First Circuit has cautioned that:

> [T]he price of entry, even to discovery, is for the plaintiff to allege a *factual* predicate concrete enough to warrant further proceedings, which may be costly and burdensome. Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition.

DM Research, Inc., 170 F.3d at 55 (emphasis in original).

The First Circuit's decision in DM Research is particularly apt here. In that case, the plaintiff sued two defendants, asserting that they were engaged in a conspiracy in violation of the antitrust laws. The plaintiff alleged that the defendants "conspired" with each other to foreclose the plaintiff from competing in the market for scientific pathology equipment, but did not allege any facts to support or substantiate the alleged conspiracy. See id. at 56. The defendants moved for dismissal, arguing that simply alleging a "conspiracy" could not establish a viable claim under the antitrust laws. See id.

The district court granted the defendants' motion to dismiss, holding that the use of a term of art such as "conspired," by itself, could not establish that the plaintiff had an actionable claim for conspiracy in restraint of trade. The First Circuit affirmed:

> [T]erms like "conspiracy," or even "agreement," are border-line: they might well be sufficient [to avoid Rule 12(b)(6) dismissal] in conjunction with a more specific allegation -- for example, identifying a written agreement or even a basis for inferring a tacit agreement -- but a court is not required to accept such terms as sufficient basis for a complaint. The case law on this point is ample.

Id. (citations omitted).

DM Research noted that although an unsubstantiated conclusory allegation might sometimes turn out to be true, the discovery process is unavailable where a plaintiff has little more at the complaint stage than unlikely speculation: "While this may mean that a civil

plaintiff must do more detective work in advance [of filing his complaint], the reason is to protect society from the costs of highly unpromising litigation." Id.[9]

A plaintiff's obligation to allege a factual predicate in support of conclusory legal terms of art also applies where a plaintiff's claim requires a showing that the defendant had "control" over an instrumentality that allegedly caused the plaintiff's injury. For example, in Canney v. City of Chelsea, 925 F. Supp. 58 (D. Mass. 1996), the court dismissed a complaint in which the plaintiff sought to hold a city liable for the acts of a municipal receiver, finding that "no evidence proffered either in [the] complaint or in pleadings submitted by any of the parties [indicated] that [the receiver] and his employees acted either specifically on [the city's] behalf or at the behest of [the city's elected officials]." Id. at 64. The court granted the city's Rule 12(b)(6) motion because the complaint consisted merely of unsupported allegations of the city's relationship to (and control over) the receiver. See id. at 64-66.

In sum, while this Court must accept as true all well-pleaded facts in these Complaints, it need not accept "[b]ald assertions, subjective characterizations, and legal conclusions" masquerading as operative facts. DM Research, 2 F. Supp. 2d at 228. It is under this standard that the sufficiency of the four theories of liability advanced by the Plaintiffs must

9 Similarly, in Panaras v. Liquid Carbonic Indus., Inc., 74 F.3d 786 (7th Cir. 1996), the plaintiff filed a complaint against his former employer alleging that the employer's alteration of its severance and pension benefit plans was done in "bad faith," and was "intentionally concealed" from the plaintiff. The plaintiff offered no factual allegations to support these characterizations. See id. at 792. The court rejected these characterizations as mere speculation, and granted the defendants' Rule 12(b)(6) motion. The court held that plaintiff's allegations "fail[ed] to meet even the most liberal conceivable standard of notice pleading," and refused to accept the terms of art as substantiation for allegations that the defendant had acted in bad faith or had intentionally concealed information. Id.; see also United States ex rel. Kneepkins v. Gambro Healthcare, Inc., 115 F. Supp. 2d 35, 41 (D. Mass. 2000) (rejecting the plaintiff's argument that a bare allegation of successorship to the business of the defendant's predecessor placed the defendant on notice "of the claims that might conceivably evolve against [the defendant]" through discovery).

be assessed, and it is under this standard that the Plaintiffs' claims against the Clear Channel Defendants should be dismissed.

### 1. Marketing That Does Not Incite Immediate Harmful Conduct Is Constitutionally Protected And Therefore Not Actionable.

Several of the Plaintiffs' Complaints assert that the Clear Channel Defendants' liability is established by various "sponsorship and marketing efforts,"[10] by serving as the "presenter" of the evening and having one of its disc jockeys on stage as host for the concert,[11] or by other generalized sponsorship or promotional activities.[12] Because these claims attempt to impose liability on the Clear Channel Defendants due to their speech-based activities, the claims run afoul of the First Amendment of United States Constitution[13] and must be dismissed as a matter of law.

The Supreme Court of Rhode Island addressed the issue of a media defendant's alleged liability for broadcast activity in DeFilippo v. National Broadcasting Co., 446 A.2d 1036 (R.I. 1982). There, the parents of a deceased minor sued NBC after their son apparently hanged himself while imitating a stunt he watched on NBC's broadcast of "The Tonight Show." The Superior Court granted summary judgment for NBC, holding that the First Amendment barred

---

10 Passa, ¶ 133.

11 Id. ¶ 45.

12 See, e.g., Guindon, ¶¶ 239, 240(i); Henault, ¶ 161, 162(i); Roderiques, ¶¶ 193, 194(i); Sweet, ¶¶ 167, 168(i).

13 "Congress shall make no law . . . *abridging the freedom of speech*, or of the press . . . ." U.S. Const. amend. I (emphasis added). The protections of the First Amendment apply to state action through the Due Process clause of the Fourteenth Amendment. See New York Times Co. v. Sullivan, 376 U.S. 254, 277 (1964). Imposition of civil liability for a defendant's exercise of protected speech constitutes a violation of the First and Fourteenth Amendments. See id.

the plaintiffs' claim. The Supreme Court affirmed, stating that "[o]f the four classes of speech which may legitimately be proscribed, it is obvious that the only one under which plaintiffs can maintain this action is incitement to immediate harmful conduct under Brandenburg v. Ohio, 395 U.S. 444 (1969). . . ." Id. at 1040. The court held that there was no basis for finding that the broadcast in any way could be construed as incitement. See id.[14]

In so ruling, DeFilippo relied on Olivia N. v. National Broadcasting Co., 178 Cal. Rptr. 888 (Ct. App. 1981). There, an action was brought against NBC and Chronicle Broadcasting Company for injuries allegedly inflicted by certain juveniles who sexually assaulted the plaintiff with a bottle after watching a movie broadcast by NBC that depicted such a scene. The trial court entered a judgment of nonsuit, and the plaintiff appealed. See id. at 890-91. The court of appeals affirmed, holding that the imposition of liability under these circumstances would impinge on constitutionally protected freedom of speech. See id. at 894.

DeFilippo also relied on Zamora v. Columbia Broadcasting System, 480 F. Supp. 199 (S.D. Fla. 1979), an action brought to recover damages on the theory that television violence caused the minor plaintiff to kill an elderly woman. The Zamora court granted a motion to dismiss, holding that the right of the public to have broad access to television programming and the right of a broadcaster to disseminate such programming could not be inhibited by those members of the public who are particularly sensitive or insensitive. See id. at 205-06.[15]

---

14 The other three classes of speech that may be proscribed are obscenity, fighting words, and "defamatory invasions of privacy." DeFilippo, 446 A.2d at 1039.

15 Other courts also have found that the First Amendment precludes the type of "media harm" or "broadcast activity" liability Plaintiffs seek to impose on the Clear Channel Defendants. See, e.g., Davidson v. Time Warner, Inc., No. Civ.A.V-94-006, 1997 WL 405907, at *16 (S.D. Tex. Mar. 31, 1997) (summary judgment for defendants; singer's lyrics describing the commission of violence against police officers did not imminently incite violence under Brandenburg); McCollum v. Columbia Broadcasting System, 249

Continued on following page

The Complaints contain no allegations that the Clear Channel Defendants incited anyone to engage in immediate unlawful or harmful conduct. See DeFilippo, 446 A.2d at 1038. Indeed, to the extent any of the Complaints attribute any particular promotional activities to the Clear Channel Defendants, those activities are completely innocuous.[16] Nor do Plaintiffs allege that the Clear Channel Defendants' marketing activities fell within any of the other recognized areas of proscribable speech. Absent such allegations, the First Amendment does not permit Plaintiffs to impose liability on the Clear Channel Defendants for speech-based activities. As such, the Plaintiffs' claims must be dismissed.

### 2. Sponsorship, Absent Control, Does Not Give Rise To A Duty Of Care Or To Liability In Tort.

Apparently recognizing that the mere broadcast of advertisements or promotions for the Great White concert do not suffice, Plaintiffs offer a variety of additional circumstances

---

Continued from previous page

Cal. Rptr. 187, 194-95 (Ct. App. 1988) (dismissing action against singer Ozzy Osbourne and media defendants for damages arising from suicide of listener; musical lyrics could not be construed to contain requisite call to action sufficient to strip them of First Amendment protections); Bill v. Superior Court, 187 Cal. Rptr. 625, 628-29 (Ct. App. 1982) (affirming summary judgment for defendants where plaintiffs sought to impose liability upon defendant film makers on the theory that a violent film attracted violence-prone persons to the vicinity of the theater; to impose liability under such circumstances would have a chilling effect on selection of subject matter for movies, in direct violation of First Amendment); Walt Disney Prods., Inc. v. Shannon, 276 S.E.2d 580, 583 (Ga. 1981) (affirming summary judgment in favor of defendant; First Amendment barred tort action against broadcaster of children's television program for injuries sustained when a child attempted to reproduce sound effects demonstrated on the program by rotating a BB inside an inflated balloon); Yakubowicz v. Paramount Pictures Corp., 536 N.E.2d 1067, 1071 (Mass. 1989) (affirming summary judgment in favor of defendant; producer's movie did not advocate violence and did not constitute incitement, and therefore producer could not be civilly liable for exercising free speech rights through production of movie).

16 See, e.g., Kingsley, ¶ 31 (Michael Gonsalves "promoted repeatedly . . . to the crowd" that it "could have the freshest beer that they were ever likely to have."); Guindon, ¶ 238 (The Clear Channel Defendants "distribut[ed] promotional tickets to the Great White Concert.")

and speculations that supposedly create liability on the part of the Clear Channel Defendants.[17] Notably absent from those allegations, however, is any factual predicate for the one factor that courts have repeatedly identified as a prerequisite for "sponsorship liability:" **control of or authority over instrumentalities that are causally related to the plaintiff's injury**. That glaring omission precludes a finding that the Clear Channel Defendants owed a legal duty to the Plaintiffs, and therefore is fatal to their sponsorship claims as a matter of law.

As this Court has observed, under Rhode Island law, "[a]nalysis of a negligence claim by a court must begin with the identification of a legal duty owed by the defendant to the plaintiff to avoid committing negligent acts which might harm the plaintiff in a tangible way." Liu v. Striuli, 36 F. Supp. 2d 452, 466 (D.R.I. 1999) (Lagueux, C.J.). "If there is no duty owed the plaintiff, there is no liability for harm caused." Id. (citing Swajian v. General Motors Corp., 559 A.2d 1041, 1046 (R.I. 1989)).[18] Furthermore, if no duty exists, then there is nothing for a trier of fact to consider, and judgment as a matter of law is appropriate. See Ferreira v. Strack, 652 A.2d 965, 970 (R.I. 1995).

The Supreme Court of Rhode Island recently reiterated that the issue of whether a legal duty exists "is purely a question of law, and the court alone is required to make this determination." Carroll v. Yeaw, 850 A.2d 90, 93 (R.I. 2004) (quoting Kuzniar v. Keach, 709

---

17 See, e.g., Guindon, ¶ 240; Henault, ¶ 162; Roderiques, ¶ 194; Sweet, ¶ 168.

18 The Supreme Court of Rhode Island has been loathe to create novel concepts of duty in tort. See generally Bandoni v. State, 715 A.2d 580, 584 (R.I. 1998) (refusing to recognize novel duty of state to notify crime victims of their rights pursuant to state constitution); Ferreira v. Strack, 652 A.2d 965, 970 (R.I. 1995) (refusing to recognize novel duty of social host to protect third parties from acts of those who obtained alcohol at social host's home); Ferreira v. Strack, 636 A.2d 682, 688-89 (R.I. 1994) (refusing to recognize novel duty of landowner to protect landowner's guests from dangers on the abutting public road and dangers presented by drivers who used that public road).

A.2d 1050, 1055 (R.I. 1998)). In Carroll, the Supreme Court also reiterated the five-factor analysis a court should employ in determining whether such a duty exists:

> "[A]mong the factors considered are (1) the foreseeability of the harm to plaintiff, (2) the degree of certainty that plaintiff suffered an injury, (3) the closeness of the connection between the defendant's conduct and the injury suffered, (4) the policy of preventing future harm, and (5) the extent of the burden to the defendant and the consequences to the community for imposing a duty to exercise care with the resulting liability for breach."

Carroll, 850 A.2d at 93 (quoting Banks v. Bowen's Landing Corp., 522 A.2d 1222, 1225 (R.I. 1987)).

In setting out their claims against the Clear Channel Defendants, Plaintiffs largely ignore or evade these fundamental principles of tort law. Instead of directly pleading the source of any duty that the Clear Channel Defendants might have owed to the attendees at the Great White concert, the Complaints speak generally of things the Clear Channel Defendants supposedly "knew or should have known,"[19] "allowed,"[20] "contributed to,"[21] or "failed to" do,[22] as if such concepts, when combined with sponsorship, created some legal duty relevant to the tragedy at issue. In reality, however, such "[c]onclusory allegations," standing alone, "are a danger sign that the plaintiff is engaged in a fishing expedition." DM Research, 170 F.3d at 55.

From a precedential standpoint, moreover, these particular shoals have been well-fished. Numerous courts around the country have considered the legal implications of various

---

19 Gray ¶ 398.

20 Guindon, ¶¶ 240(b), (d), 279(d), (i)-(1); Henault, ¶¶ 162(b), (d), 177(d), (i)-(1); Roderiques, ¶¶ 194(b), (d), 230(d), (i)-(1); Sweet, ¶¶ 168(b), (d), 197(d), (i)-(1).

21 Guindon, ¶¶ 238, 240(e); Henault ¶¶ 160, 162(e); Passa, ¶ 28; Roderiques, ¶¶ 192, 194(e); Sweet, ¶¶ 166, 168(e).

22 Guindon, ¶¶ 240(a), (c), (f), (h), 279(a), (c), (e)-(h), (n); Henault, ¶¶ 162(a), (c), (f), (h), 177(a), (c), (e)-(h), (n); Passa, ¶¶ 63, 135; Roderiques, ¶¶ 194(a), (c), (f), (h), 230(a), (c), (e)-(h), (n); Sweet, ¶¶ 168(a), (c), (f), (h), 197(a), (c), (e)-(h), (n).

levels of involvement by sponsors in public events. While individual outcomes have turned on the circumstances of each case, a central tenet of law shines through them all: **one who sponsors, presents, promotes, markets, advertises or otherwise becomes involved in a public event cannot be held liable for injuries sustained in connection with that event in the absence of control -- either legal or actual -- over something that caused the injuries.**

The leading decision in this area is Vogel v. West Mountain Corp., 470 N.Y.S.2d 475 (App. Div. 1983). There, a beer company and its local distributor sponsored a ski competition by contributing racing bibs and banners bearing the company's logo to the slope operator who conducted the event. During the competition, the plaintiff was injured when she lost control of her skis and struck the concrete base of a ski tower. In the ensuing lawsuit, the plaintiff asserted that the beer company was negligent in failing to properly arrange the ski course and in failing to warn of the dangers inherent in slalom skiing. The trial court granted summary judgment for the beer company, ruling that, "absent control over the design of the course, the supervision of the race, or the qualifications of the entrants," liability could not be imposed upon the sponsor. Id. at 476.

In affirming, the Appellate Division noted that the plaintiff sought to create a novel theory of liability for event sponsors who lack control over an event, which would require sponsors to control the conduct of third parties who actually control the event. See id. at 478. The court observed that a duty to control the acts of another can exist only if there is a special relationship among the plaintiff, the defendant and the third party, and that no such special relationship existed between the plaintiff, the beer company and the slope operator. See id. The court noted the impracticality of imposing the type of liability the plaintiff sought on event

sponsors: "While it cannot seriously be disputed that a sponsor benefits by the promotion of its product, financial gain does not of itself give rise to a legal obligation." Id.

Vogel's approach to "sponsorship liability" -- control being a prerequisite to duty, which in turn is a prerequisite to liability -- has been cited and followed by many courts in cases involving similar theories of liability. See, e.g., Gehling v. St. George's Univ. Sch. of Med., Ltd., 705 F. Supp. 761, 766 (E.D.N.Y. 1989) (sponsor did not have "sufficient control" over the race as "to be in a position to prevent negligence," and thus could not be held liable for runner's death); Previs v. Spano, No. CV-950327537S, 1998 WL 142460, at *2 (Conn. Ct. App. March 20, 1998) ("Sponsorship of an event, without the right to possession and/or control, does not subject the sponsor to liability for action of third parties.").[23]

Other courts have reached the same conclusion without expressly citing Vogel. For example, in Lopresti v. City of Malden, No. CA9801459, 2001 WL 716902, at *2 (Mass. Ct. App. April 26, 2001), for example, a bank that sponsored a blood screening event was found to owe no duty to prevent injuries suffered by an attendee who was tested with a needle that had been used previously. The Lopresti court concluded that "[g]enerally, a sponsor is not liable in

---

23 See also, e.g., Gragg v. Wichita State Univ., 934 P.2d 121, 132 (Kan. 1997) (municipal sponsor of fireworks show that had no control over show was not liable for injuries suffered by attendee of show); Mercer v. City of New York, 679 N.Y.S.2d 694, 695 (App. Div. 1998) (police athletic league did not control coaching, training, supervision or organization of youth baseball league, and thus bore no responsibility for injuries suffered by player during practice); Megna v. Newsday, Inc., 666 N.Y.S.2d 718, 719 (App. Div. 1997) (newspaper sponsor of race was not liable for runner's injuries where newspaper was not involved in design, layout, maintenance or control of race course); Mongello v. Davos Ski Resort, 638 N.Y.S.2d 166, 167 (App. Div. 1996) (no duty owed to skier by event sponsor that did not control or maintain operation of ski slopes on which plaintiff's decedent was killed); McGrath v. United Hospital, 562 N.Y.S.2d 193, 194 (App. Div. 1990) (hospital that held fundraiser at amusement park, but did not control conditions at park, owed no duty of care toward event attendee who was injured on ride); Gibbons v. County Legislature, Oswego County, 556 N.Y.S.2d 428, 429 (App. Div. 1990) (fishing derby sponsor had no control or supervision over event and thus owed no duty of care to participant who drowned during derby).

negligence for injuries caused to event participants if the sponsor has no control over the event and is in no position to prevent the injuries." Id.[24]

The only reported Rhode Island case to address this issue predated Vogel by sixty-seven years, but used a strikingly similar analysis. In Sroka v. Halliday, 97 A. 965 (R.I. 1916), the Supreme Court of Rhode Island considered an action brought by a boy injured after a fireworks display that had been organized by a committee appointed by the City of Pawtucket. The city council had vested the committee with the "full power to act" to organize the fireworks. The committee in turn contracted with a fireworks vendor to furnish and set off the fireworks at the times and places specified by the committee. See id. at 967.

During the display, some of the fireworks fell to the ground without exploding. A few days later, a young boy found one of the unexploded incendiaries near his home and

---

24 See also, e.g., Zarrelli v. Barnum Festival Soc'y, Inc., 505 A.2d 25, 29 (Conn. Ct. App. 1986) (parade sponsor's financial assistance to parade, absent control or management of event, prevented liability against sponsor for injuries that occurred during parade); Landvik v. Herbert, 936 P.2d 697, 701 (Idaho Ct. App. 1997) (mere fact that defendant allowed advertisements on his premises for concert at which plaintiff was injured did not give rise to duty of care to prevent plaintiff's injury); Hebert v. St. Paul Fire & Marine Ins. Cos., 757 So.2d 814, 816-17 (La. Ct. App. 2000) (sponsor of race on public road not liable for plaintiff's injury, caused by disrepair of road course, where sponsor lacked "care, custody and control" of road); Lambert v. Pepsico, Inc., 698 So.2d 1031, 1032 (La. Ct. App. 1997) ("sponsor" or "promoter" of carnival not liable for injuries caused by carnival ride where "sponsor" or "promoter" had no control over rides); Fjerstad v. Heartland Racing Ass'n, Inc., 563 N.W.2d 87, 89 (Minn. Ct. App. 1997) (bar that sponsored portions of snowmobile racing event not liable for injuries to plaintiff who crashed on race course six days after event, because bar had no control over race course conditions); Esfahani v. Five Star Prods., Inc., No. A-97-1246, 1999 WL 273996, at *6 (Neb. Ct. App. May 4, 1999) (producer of stage show not liable for plaintiff's injuries caused by fall into uncovered hole in stage, where producer lacked control over conditions in theater); Smith v. West Rochelle Travel Agency, Inc., 656 N.Y.S.2d 340, 341-42 (App. Div. 1997) (tour organizer not liable for independent contractor's negligence in providing alcohol to minor, where tour organizer had no contractual or legal authority to control independent contractor's acts); Ricard v. Roseland Amusement & Dev. Corp., 626 N.Y.S.2d 186, 187 (App. Div. 1995) ("no valid line of reasoning" supported argument that dance club event promoter owed duty of care to patron who was injured at dance club event).

attempted to ignite it. The incendiary exploded in his hand and caused him severe injuries. See id. at 966. He later sued the committee for its negligent conduct of the fireworks display.

The Supreme Court of Rhode Island held that the contract between the committee and the fireworks vendor required the vendor to perform all of its acts "in a manner satisfactory to [the committee]." Id. at 970. The Supreme Court therefore found that the committee and its members retained full authority to control the "manner" of all things relating to the fireworks displays, including safety measures to prevent injuries like those suffered by the plaintiff. See id. From this control flowed a legal duty: "[T]he defendants in this case had the right to control this display if they saw fit, and it was their duty to see that proper precautions were taken." Id. at 972.[25]

The Supreme Court of Rhode Island's recent decision in Carroll v. Yeaw, 850 A.2d 90 (R.I. 2004), with its reiteration of the five factors to be considered in determining whether a legal duty exists, confirms that control is of paramount importance to the duty analysis under Rhode Island law. In Carroll, the plaintiff fell down a town-owned stairway that had been repaired defectively by a private citizen who filed a building permit application that was signed by the defendant, a registered contractor. The contractor had no involvement with the actual repair work, however, aside from allowing the private citizen to use his name on the application.

---

25 Courts in other jurisdictions also have held that event sponsors who have control over an event owe a duty of care to event attendees, and thus can have liability for attendees' injuries that are suffered at the event. See Weirum v. RKO Gen., Inc., 539 P.2d 36, 39-41 (Cal. 1975) (radio station that conducted and controlled contest liable for the death of driver who was involved in a collision with two listeners while listeners were participating in radio station's contest); Baker v. Mid Maine Med. Ctr., 499 A.2d 464, 467-68 (Me. 1985) (medical center that "retained concomitant control" over golf exhibition at golf club had "non-delegable responsibility" to ensure safety of attendee who was injured by errant golf ball during exhibition). Plaintiffs' conclusory allegations of the Clear Channel Defendants' participation in the events leading to The Station nightclub fire, however, simply do not rise to the level of control that supported findings of duty and/or liability in these cases.

A permit was issued to the private citizen even though, as it turned out, the repairs did not require one. See id. at 91-93.

While acknowledging that the hazard created by the private citizen's repair of the stairway (as facilitated by the citizen's use of the contractor's name on his permit application) was "arguably . . . foreseeable," the Supreme Court of Rhode Island nevertheless held that the contractor did not owe the plaintiff a duty of care. The Court found that "[s]everal factors disrupt[ed] the closeness of the connection between defendant's conduct in allowing his name . . . to be listed on the permit application and [the plaintiff's] injury[,]" including the facts that the work did not require a permit, that the private citizen performed the repairs (rather than the contractor), and that the town's own building inspector had failed to notice any defects when he determined that the stairway complied with the building code. Id.

Carroll reinforces the concept that, without the right to control an event, a "sponsor" owes no duty of care to event attendees, even where the accident in question may be foreseeable. Indeed, by conceding that the plaintiff's injury was "arguably . . . foreseeable," the Carroll court intimated that the first of the five factors generally considered by Rhode Island courts in determining whether a duty exists was satisfied. Nevertheless, the Court ultimately ruled that foreseeability alone was not dispositive because of the absence of a close-enough connection between anything the defendant did and any injury the plaintiff suffered -- the third factor of the five-factor Rhode Island duty analysis.[26]

---

26 Carroll also indicates that public policy considerations -- the fifth factor of the Rhode Island duty analysis -- can be trumped by the absence of control. See Carroll, 850 A.2d at 93. ("the tenuous connection between the defendant's actions and [the plaintiff's] injuries outweighs any foreseeability of [the plaintiff's] injury as well as any public policy arguments"). In sponsorship cases, this "public policy" factor itself counsels against the imposition of a duty. As the Vogel court stated, imposing a duty of care on an event sponsor who lacked control over the event "would prove an undue expansion of the

Continued on following page

Finally, this Court's decision in McAleer v. Smith, 860 F.Supp. 924 (D.R.I. 1994) (Lagueux, C.J.), also is consistent with the rule requiring control of an event in order to impose a duty of care on a "sponsor." In McAleer, plaintiffs' decedents were killed during a "tall ships" race when the vessel on which they were serving as trainees sank during a sudden storm. The race had been organized and sponsored by defendant American Sail Training Association ("ASTA"), which had solicited the decedents' participation and assigned them to the vessel on which they died. See id. at 926-29.

In holding that ASTA owed the decedents a legal duty to place trainees aboard "seaworthy, properly manned and safe vessels," and to "exercise reasonable care in the conduct" of the race, this Court examined ASTA's involvement in, and control over, numerous aspects of the competition:

> In addition to being a placement agency for said trainees, . . . ASTA also provided instruction through counsellors and, in this case, actively promoted the vessels and the Tall Ships Race in which they participated. In fact, ASTA co-sponsored the race along with the United Kingdom's STA, collecting and soliciting funds to support its efforts as a sponsor. ASTA also served along with STA on the Race Committee, and the race was conducted pursuant to the "Racing and Sailing Rules" of STA and ASTA. Finally, pursuant to Racing and Sailing Rule 70.(3), ASTA reserved the right to inspect safety conditions aboard the vessels and, indeed, inspected the MARQUES' safety equipment prior to the race.

---

Continued from previous page

sponsorship relationship, the net result of which would be to discourage further participation." Vogel, 470 N.Y.S.2d at 487; see also McGrath v. United Hosp., 562 N.Y.S.2d 193, 194 (App. Div. 1990) (imposing duty on hospital to control rides at amusement park at which hospital sponsored event would be "unreasonable" given hospital's lack of expertise to operate rides); cf. Lopresti v. City of Malden, No. CA9801459, 2001 WL 716902, at *2 (Mass. Super. Ct. April 26, 2001) (imposing a duty of care on a sponsor of a charitable event "would likely have a chilling effect on the willingness of individuals and businesses to provide such [sponsorship]. . . . In these circumstances, sound social policy would not be advanced by a rule that discouraged charitable giving"). This potential chilling effect is particularly noteworthy in this case, where virtually all of the Clear Channel Defendants' alleged conduct consisted of speech or other communications protected by the First Amendment. See pp. 10-12, supra.

Id. at 931.

This intimate and comprehensive involvement by ASTA with the very things that allegedly caused the trainees' deaths sharply diverges from the alleged involvement of the Clear Channel Defendants in the Great White concert. Plaintiffs do not and cannot allege any facts supporting a conclusion that the Clear Channel Defendants had a right to control anything with respect to the Great White Concert -- not the number of tickets sold, not the number of patrons admitted, not the soundproofing of the premises, not the use of pyrotechnics, and not the adequacy of emergency exits or other safety measures. Absent such allegations, the Complaints fail as a matter of law.

Plaintiffs' allegations that the Clear Channel Defendants "knew or should have known"[27] of the harm that ultimately befell the people attending the Great White concert suffers the identical fate. Foreseeability is arguably present in virtually every sponsorship liability case. In Vogel, for example, the sponsor arguably could have foreseen that a skier participating in the ski race might collide with one of the ski lift towers. See Vogel, 470 N.Y.S.2d at 478.[28] Foreseeability, however, is not a substitute for a direct connection between something the sponsor did or controlled and the injury suffered by the plaintiff. Instead, as in Carroll, there

---

27 E.g., Gray, ¶ 398.

28 See also, e.g., Zarrelli v. Barnum Festival Soc'y, Inc., 505 A.2d 25 (Conn. Ct. App. 1986) (woman crushed under parade float after becoming drunk during parade festival sponsored by bank); Lambert v. Pepsico, Inc., 698 So.2d 1031 (La. Ct. App. 2000) (riders of carnival ride injured by ride malfunction during carnival sponsored by soft drink company); Mercer v. City of New York, 679 N.Y.S.2d 694 (App. Div. 1998) (little league baseball player hurt after being struck in the eye with a baseball during practice in league sponsored by police organization); Smith v. West Rochelle Travel Agency, Inc., 656 N.Y.S.2d 340 (App. Div. 1997) (student who purchased spring break tour package from tour operator died after becoming intoxicated and jumping off cruise vessel during tour); Gibbons v. County Legislature, Oswego County, 556 N.Y.S.2d 428 (App. Div. 1990) (fisherman drowned during fishing derby sponsored by beer company).

must be a "closeness of connection" (i.e. control) before finding a duty owed to the plaintiff. The Clear Channel Defendants have no such connection here -- alleged or otherwise. Accordingly, Plaintiffs' claims predicated on what the Clear Channel Defendants "knew or should have known" must be dismissed.

### 3. Absent Control, There Is No "Joint Enterprise" Or "Joint Venture."

Plaintiffs also seek to affix liability upon the Clear Channel Defendants by alleging that they were part of a vaguely described "joint enterprise" or "joint venture" that was collectively responsible for the fire.[29] According to the Supreme Court of Rhode Island,

> the term 'common' or 'joint' enterprise means an association of two or more persons in the pursuit of a common purpose under such circumstances that each has the authority, express or implied, to act for all in respect to the control of the means or agencies employed to execute such common purpose; as a result of which the negligence of one participant may be imputed to another so as to bar recovery against a negligent defendant.

Morrarty v. Reali, 219 A.2d 404, 407 (R.I. 1966). See also Salmeron v. Nava, 694 A.2d 709, 712 (R.I. 1997); Farrar v. Edgewood Yacht Club, 302 A.2d 782, 784 (R.I. 1973).

The key elements under Rhode Island's formulation of the joint enterprise doctrine are: (1) the existence of a joint purpose among the joint enterprisers; and (2) the equal authority of all joint enterprisers to control the means of executing the joint purpose. See Salmeron, 694 A.2d at 712.[30]

---

29 See Passa, ¶¶ 45, 63, 133-34; Guindon, ¶¶ 276-84; Henault, ¶¶ 174-78; Roderiques, ¶¶ 227-34; Sweet, ¶¶ 194-201.

30 Some of the Complaints allege that the Clear Channel Defendants participated in a "joint venture," rather than a "joint enterprise," with other defendants in relation to the Great White concert. See Guindon, ¶ 277; Henault, ¶ 175; Roderiques, ¶ 228; Sweet, ¶ 195. Under Rhode Island law, a "joint venture" is an "undertaking by two or more persons

Continued on following page

In Salmeron v. Nava, the plaintiff tenant was injured while performing construction work in an apartment he rented from the defendant landlord. At the time the plaintiff became a tenant, the landlord explained that he would be making periodic improvements to the apartment; during those periods, the tenant sometimes volunteered to assist the landlord. See id. at 711. The tenant was injured while working in the apartment while the landlord was not present, and sued for his injuries. The landlord claimed that the repair work constituted a joint enterprise between the two, and that any negligence of the landlord thus should be imputed to the plaintiff. The trial court agreed, and entered judgment for the landlord. See id.

The Supreme Court of Rhode Island reversed, holding that no joint enterprise existed because no evidence indicated that the tenant had either a common purpose with the landlord or equal authority to execute such a purpose. See id. at 712. The Court found that while the landlord made the repairs out of his desire to improve his property, the tenant volunteered to help with the work because of his appreciation for the landlord providing him a place to stay -- not because he desired to improve the landlord's property. See id. The Court held that the landlord made all decisions on the repair work, and that the tenant was never in a

---

Continued from previous page

jointly to carry out a single business enterprise for profit." Fireman's Fund Ins. Co. v. E.W. Burman, Inc., 391 A.2d 99, 101 (R.I. 1978). Among the key elements in determining the existence of a "joint venture" is whether the alleged "joint venturers" each had control over the subject of the purported joint venture. See, e.g., McAleer v. Smith, 57 F.3d 109, 114-15 (1st Cir. 1995); McAleer v. Smith, 860 F. Supp. 924, 943 (D.R.I. 1994) (Lagueux, C.J.). A joint venture also requires that all profits and losses from the venture be shared by the joint venturers. See McAleer, 860 F. Supp. at 943. The aforementioned Complaints have not alleged precisely what the subject of the supposed joint venture was, nor whether all of the supposed "joint venturers" shared the profits and losses from that "venture." Moreover, as discussed above on pages 12-26, Plaintiffs have not pleaded sufficiently as to the control issue to avoid dismissal under Rule 12(b)(6). As such, the Plaintiffs' joint venture claims, like their joint enterprise claims, are unavailing against the Clear Channel Defendants.

position to question the landlord's work methods. See id. Thus, no indicia of a joint enterprise existed, and no negligence of the landlord could be imputed to his tenant. See id. at 712-13.

Courts in other states agree that joint control is essential to joint enterprise or joint venture claims made against event sponsors. For example, in O'Sullivan v. Hemisphere Broad. Corp., 520 N.E.2d 1301 (Mass. 1988), the plaintiff sued a radio station for its alleged negligence in sponsoring an event at a bar. The plaintiff alleged that an attendee of the event became drunk and crashed into the plaintiff while driving away from the event. Under the station's sponsorship agreement, the station donated radio time to advertise the event and agreed to provide the appearance of some of its on-air personalities at the event. See id. at 1302. The plaintiff claimed that by sponsoring the event, the radio station became a joint venturer with the bar and therefore had a right and obligation to control the distribution of alcohol at the event. See id.

The trial court granted summary judgment in favor of the radio station, and the Supreme Judicial Court of Massachusetts affirmed. The court held that the radio station was neither "directly [nor] vicariously authorized to supervise the distribution of beer and hence . . . had [no] right to control its distribution." Id. at 1303. As a result, the bar's negligence in serving the intoxicated driver could not be imputed to the radio station as a joint venturer. See id.[31]

The joint venture theory also was rejected as a basis for an event sponsor's liability in Archer v. Outboard Marine Corp., 908 S.W.2d 701 (Mo. Ct. App. 1995). In Archer,

---

31 Similarly, in Triplex Comms., Inc. v. Riley, 900 S.W.2d 716, 718-19 (Tex. 1995), a radio station sponsored an event at a bar at which an underage patron was served alcohol, became drunk, and later crashed his car into two policemen. In refusing to submit the plaintiff's joint enterprise claim against the radio station to the jury, the trial court noted that no evidence existed that supported a key element of the joint enterprise theory -- an equal right to control the "enterprise." The Supreme Court of Texas affirmed the trial court's decision, reiterating the legal insufficiency of the evidence of joint control over the "enterprise." See id. at 718-19.

the plaintiff sued the sponsors of a bass fishing tournament at which a participant recklessly drove his boat into another boat, killing and injuring several people. The defendant sponsor displayed its logos on banners and clothing worn by tournament participants and demanded that the tournament organizers implement certain safety regulations as a condition of the sponsor's participation. See id. at 703. The sponsor did not conduct the tournament, however, nor did it supervise or direct the actions of the tournament organizer in running the tournament on the day of the accident. See id.

The trial court granted summary judgment for the sponsor, and the court of appeals affirmed, finding that the sponsor's participation in the tournament did not make it a joint venturer. "For the [tournament] to have constituted a joint venture, [the organizer and the sponsor] would necessarily have had equal voices in directing the meets. They did not. Although [the sponsor] directed the use of its logos and demanded minimal safety requirements, it did not have any voice in the remaining, and more significant, tournament details." Id. (citations omitted).

Under these cases, as under Rhode Island law, Plaintiffs' conclusory "joint enterprise" and "joint venture" allegations are insufficient to state a claim upon which relief may be granted. Indeed, although the Plaintiffs allege that the Clear Channel Defendants and the other "joint enterprise defendants" shared a desire to profit and gain from their involvement with the Great White concert, they fail to allege any factual predicate that the Clear Channel Defendants exercised or were authorized to exercise equal (or indeed any) control over that event.

Likewise, while Plaintiffs allege several causal factors that led to their injuries, including the improper use of pyrotechnics, the absence or poor condition of sprinklers, fire exits

and other fire safety precautions, the existence of flammable soundproofing on the walls of the nightclub, and the sale of alcohol, they fail to allege that any of these items were used to further a "joint purpose" that included the Clear Channel Defendants or that the Clear Channel Defendants had any control over any of these factors. In short, the Plaintiffs' allegations that the Clear Channel Defendants participated in a joint enterprise or joint venture are simply 'bald assertion[s]' that cannot withstand a motion to dismiss. See Day v. Fallon Cmty. Health Plan, Inc., 917 F. Supp. 72, 75 (D. Mass. 1996).

**4. The Statutory Noncompliance Claims Are Not Actionable As To The Clear Channel Defendants.**

Several of the Complaints refer to various Rhode Island fire safety and pyrotechnics regulatory statutes in an attempt to manufacture a duty of care for the Clear Channel Defendants. These attempts miss their mark. For example, the Complaint in Passa suggests that the Clear Channel Defendants were negligent because they "failed to check fire exits as required by Rhode Island General Laws, Section 23-28.6-2."[32] That statutory provision, entitled "Egress facilities required -- Inspection by owner," expressly requires the "owner or management" of a place of assembly to inspect all exits from the building not more than ninety minutes prior to the beginning of any assembly on the premises.[33]

Although no reported decisions interpret section 23-28.6-2, the statute's language is clear and unambiguous, and therefore must be construed according to the plain and ordinary

32 See Passa ¶ 135; see also Passa, ¶ 64

33 As amended in July 2003, the statute authorizes a $5,000 maximum fine for "any person or entity" found to have violated the statute, but does not require anyone other than the "owner or management" of the place of assembly to inspect the premises. See 2003 R.I. Laws Ch. 03-106, § 23-28.6-2(b) (July 7, 2003) (now codified at R.I. Gen. Laws § 23-28.6-2(b)).

meaning of its terms. See Oliveira v. Lombardi, 794 A.2d 453, 457 (R.I. 2002). Additionally, the traditional principle that the express enumeration of items in a statute indicates a legislative intent to exclude all items not listed therein, see Murphy v. Murphy, 471 A.2d 619, 622 (R.I. 1984), suggests that the legislature's inclusion of "owners" and "management" in section 23-28.6-2 signals an intent that no other entities be required to inspect a place of assembly for facilities of egress. Plaintiffs do not allege, of course, that the Clear Channel Defendants were either owners or managers of The Station nightclub -- nor could they. As such, section 23-28.6-2 cannot support any claim for the Clear Channel Defendants' liability.

Some of the Complaints also conclusorily allege that the Clear Channel Defendants failed to comply with sections 23-28.6-13 (requiring emergency lighting), 23-28.6-15 (regulating the use of flammable decorative and acoustical material), and 23-28.11-3 (imposing standards for the use of pyrotechnics before proximate audiences, and requiring the issuance of permits therefor) of the Rhode Island General Laws.[34] Notably, each of these statutes regulates the use or control of a specific instrumentality (i.e. the premises of a place of assembly, fireworks and pyrotechnics), although none of the statutes define who must comply with their requirements.

Sections 23-28.6-13 and 23-28.6-15 both regulate conditions at places of assembly. Plaintiffs' reliance on these statutes thus implies that the Clear Channel Defendants should have some responsibility for the conditions of The Station nightclub on the night of the fire. However, Rhode Island courts clearly have held that "[t]he basis for imposing a duty of

34 See Guindon, ¶ 240(c), (d), 279 (b)-(e); Henault, ¶¶ 162(c), (d), 177(b)-(e); Roderiques, ¶¶ 194(c), (d), 230(b)-(e); Sweet, ¶¶ 168(c), (d), 197(b)-(e).

care in premises liability cases is that the defendants must have possession and control over the premises." See Moseley v. Fitzgerald, 773 A.2d 254, 257 (R.I. 2001).

Although Plaintiffs seek to hold the Clear Channel Defendants liable for these alleged statutory deficiencies at the nightclub, none of the Plaintiffs allege any facts that establish that the Clear Channel Defendants owned, possessed or controlled the nightclub at any time. As such, sections 23-28.6-13 and 23-28.6-15 cannot be read to require any action from, and cannot support a claim for liability against, the Clear Channel Defendants.

Plaintiffs' reliance on section 23-28.11-3 is similarly misplaced. That statute incorporates standards for the "storage, handling, transportation and display" of fireworks and pyrotechnics, and establishes guidelines for the issuance of permits "to possess and display" fireworks and pyrotechnics. See R.I. Gen. Laws § 23-28.11-3. The Plaintiffs do not allege any factual predicate to suggest that the Clear Channel Defendants stored, handled, transported, displayed, or possessed any pyrotechnics on the night of the fire -- nor, again, could they. Given the language of the statute, a duty of care (and consequently liability) cannot be imposed upon an actor to whom the legislature apparently did not intend the statute to apply. See, e.g., Oliveira, 794 A.2d at 457 (court must preserve legislative intent and purpose in construing a statute).

Finally, to the extent that Plaintiffs are seeking relief for the Clear Channel Defendants' alleged noncompliance with the statutes cited above (rather than using those statutes to suggest a standard of care that allegedly was breached by the Clear Channel Defendants), there is no basis for such relief. None of the statutes relied upon by Plaintiffs enumerate a private right of action for noncompliance with those statutes. The Supreme Court of Rhode Island traditionally has rejected similar attempts to create similar private rights of action where the statutes at issue provide none:

> To inject a judicial remedy . . . into a statute that plainly does not contain [one], particularly where there is no evidence to suggest that the Legislature had intended to create [one], "would be interpretation by amendment." . . . But it is not the function of this Court to act as a super legislative body and rewrite or amend statutes already enacted by the General Assembly.

Bandoni v. State, 715 A.2d 580, 585 (R.I. 1998) (quoting Rhode Island Fed. of Teachers, AFT, AFL-CIO v. Sundlun, 595 A.2d 799, 802 (R.I. 1991)). As such, this Court also should refrain from creating causes of action under the statutes cited above, insofar as the state legislature did not create them itself.

In sum, the Plaintiffs' attempts to manufacture additional bases for a duty owed by the Clear Channel Defendants from Rhode Island's statutes are without substance, both legally and as pleaded. Any theory of liability based upon these grounds therefore must be dismissed as to the Clear Channel Defendants.

**B. ALTERNATIVELY, THE CLEAR CHANNEL DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THEY DID NOT CONTROL ANY OF THE INSTRUMENTALITIES THAT CAUSED OR CONTRIBUTED TO THE PLAINTIFFS' ALLEGED INJURIES.**

If, despite the arguments set forth above, this Court concludes one or more of the challenged Complaints contain allegations sufficient to state a factual predicate upon which relief can be granted against the Clear Channel Defendants, it should consider the verified facts set forth in the accompanying Omnibus Statement of Undisputed Facts and treat the Clear Channel Defendants' motion as one for summary judgment. See Fed. R. Civ. P. 12(b). Summary judgment in favor of the Clear Channel Defendants is warranted here because, regardless of the unverified allegations of the Complaints, there is no genuine issue as to any fact material to Plaintiffs' claims. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

As the moving parties under Rule 56, the Clear Channel Defendants bear the initial responsibility of stating the basis for their motion and demonstrating the absence of a genuine issue of material fact. In response, Plaintiffs (as the non-moving parties) cannot rest on the bare allegations in their Complaints, but rather must come forward with competent, supported evidence creating genuine, disputed factual issues. See Collier v. City of Chicopee, 158 F.3d 601, 604 (1st Cir. 1998); McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). Furthermore, "bare allegations in a party's unsworn pleadings or in a lawyer's brief do not carry weight in the summary judgment calculus." Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 39 (1st Cir. 2004).

Even though Plaintiffs have conducted little, if any, formal discovery, they may not avoid summary judgment simply by suggesting that such discovery might uncover information supporting their allegations. See C.B. Trucking, Inc. v. Waste Mgmt., Inc., 137 F.3d 41, 44-45 (1st Cir. 1998) (holding that conversion of Rule 12(b)(6) motion to Rule 56 motion was proper, and affirming the grant of defendant's Rule 56 motion, where plaintiff had taken no discovery on the central issue of its claim prior to defendant's filing of Rule 12(b)(6) motion, and where plaintiff failed to persuade court that discovery would be fruitful).

On the contrary, in order to secure such discovery, Plaintiffs must present affidavits setting forth facts sufficient to avoid summary judgment or explaining why such facts are not available at this time. See Fed. R. Civ. P. 56(e), (f). If they do want to pursue discovery, moreover, they are required to set forth, by affidavit or written representation subject to Rule 11, "some plausible basis for [their] belief that the specified 'discoverable' material facts likely exist which have not yet come in from the cold." Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985, 988 (1st Cir. 1988). "[A] plaintiff's speculative assertions

that the defendant has unspecified facts in its possession necessary for the plaintiff to develop its legal theories coupled with conclusory statements that discover should be commenced are 'entirely inadequate to extract the balm of Rule 56(f).'" C.B. Trucking, 137 F.3d at 45.

As the facts set forth in the accompanying Omnibus Statement of Undisputed Facts establish,[35] the Clear Channel Defendants' involvement with the performance of Great White was routine, straightforward, and wholly lawful. The Clear Channel Defendants neither incited immediate violence nor controlled The Station or the concert that occurred. Given the months of intensive investigation into the fire by innumerable agencies and litigants (including Plaintiffs and their attorneys[36]), there is no reason to believe that discovery would uncover any facts that would establish the Clear Channel Defendants' control of The Station nightclub.

Whatever possible reservation this Court might have about dismissing Plaintiffs' claims against the Clear Channel Defendants on the face of the challenged Complaints should be resolved by a review of the verified, incontestable facts proffered by the Clear Channel Defendants. Simply put, the Clear Channel Defendants had no control, and no right to control, any factor that conceivably could have caused Plaintiffs' injuries. No amount of discovery will change these basic facts.

---

35 The facts set forth in the Omnibus Statement of Undisputed Facts, which was filed in relation to the Clear Channel Defendants' Motions to Dismiss or, in the Alternative, for Summary Judgment in each of the civil actions identified in this Omnibus Memorandum, are hereby incorporated by reference as though they were set forth herein in their entirety.

36 See, e.g., Tracy Breton, Station Fire Lawsuit Names 46 Defendants, Providence Journal, July 23, 2004 ("Mark Mandell, co-chairman of the lawyers' committee that filed the [Gray] suit, said it 'is the product of over a year's work preserving and analyzing evidence, engaging and working with experts, researching the facts and law, and working closely with both the injured and the families of those who passed away.").

Thus, Plaintiffs' attempt to impose liability on the Clear Channel Defendants as a result of alleged marketing or promotion of the event at issue would unconstitutionally restrict freedom of speech, and therefore fails as a matter of law. See pp. 10-12, supra.

Their theory of "sponsorship" liability against the Clear Channel Defendants fails as a matter of law. See pp. 12-22, supra.

Their attempt to impose liability on the Clear Channel Defendants as supposed participants in a "joint enterprise" or "joint venture" fails as a matter of law. See pp. 22-26, supra.

Finally, their attempt to impose obligations, and liability, on the Clear Channel Defendants under various sections of the Rhode Island General Laws also fails as a matter of law. See pp. 26-29, supra.

## IV. CONCLUSION

The story presented by Plaintiffs in their Complaints is both tragic and sympathetic. As a matter of law, however, that story is insufficient to assign any responsibility for Plaintiffs' injuries to the Clear Channel Defendants. At bottom, the claim against the Clear Channel Defendants is that they were present at the scene of the fire and had advertised the concert to the public. Although Plaintiffs adorn this theory with legalistic terms like "sponsorship," "joint enterprise" and "joint venture," their allegations are bereft of substance, and the undisputed material facts on the record confirm the lack of support for these contrived allegations.

The claims against the Clear Channel Defendants in the challenged Complaints should be dismissed for failure to state a claim upon which relief can be granted. In the

alternative, summary judgment should be entered in favor of the Clear Channel Defendants because there exists no genuine issue as to any material fact and the Clear Channel Defendants are entitled to judgment as a matter of law.

Dated: September 29, 2004

Respectfully submitted,

The Clear Channel Defendants

By their Attorneys,

Stephen M. Prignano (# 3649)
Stephen J. MacGillivray (# 5416)

Edwards & Angell, LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(Fax) (401) 276-6611

and

James J. Restivo, Jr., Esq.
W. Thomas McGough, Jr., Esq.

REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA 15219
(412) 288-3131
(Fax) (412) 288-3063

**CERTIFICATION**

I, the undersigned, hereby certify that on the 30th day of September, 2004, I mailed a copy of the within **OMNIBUS MEMORANDUM OF THE CLEAR CHANNEL DEFENDANTS IN SUPPORT OF THEIR MOTIONS TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT** by first-class mail, postage prepaid, to the following counsel of record:

Brian R. Cunha, Esq.
Karen A. Alegria, Esq.
Brian Cunha & Assoc.
904 Broadway
East Providence, RI 02914

Daniel J. Horgan, Esq.
Horgan Law Offices
Shaw's Cove 5, Suite 200
New London, CT 06320

Lauren D. Wilkins, Esq.
Ronald P. Langlois, Esq.
Smith & Brink, P.C.
One State Street
Suite 400
Providence, RI 02908

Michael T. Ryan, Esq.
Ryan, Ryan, Johnson & Deluca
80 Fourth Street
P.O. Box 3057
Stamford, CT 06905

Anthony F. DeMarco, Esq.
Mark T. Reynolds, Esq.
Boyer, Reynolds & DeMarco, Ltd.
170 Westminster Street, Suite 200
Providence, RI 02903

James T. Murphy, Esq.
Hanson Curran LLP
146 Westminster Street
Providence, RI 02903-2218

Randall L. Souza, Esq.
Fred A. Kelly, Esq.
Nixon Peabody LLP
One Citizens Plaza, Suite 700
Providence, RI 02903

Edwin F. McPherson, Esq.
McPherson & Kalmansohn
1801 Century Park East, 24th Floor
Los Angeles, CA 90067

Edward T. Hinchey, Esq.
James Scanlon, Esq.
Sloane & Walsh, LLP
Three Center Plaza
8th Floor
Boston, MA 02108

David B. Zabel, Esq.
Cohen & Wolf, P.C.
1115 Broad Street
P.O. Box 1821
Bridgeport, CT 06604

Ronald J. Resmini, Esq.
Resmini Law Offices, Ltd.
155 South Main Street
Providence, RI 02903

Gerald P. Dwyer, Jr., Esq.
Robinson & Cole
280 Trumbull Street
Hartford, CT 06103

Ronald J. Creamer, Esq.
155 South Main Street
Suite 400
Providence, RI 02903

Carla Ottaviano, Esq.
Law Offices of DuBorg & Farrell
200 Glastonbury Boulevard, Suite 301
Glastonbury, CT 06033

Robert I. Reardon, Jr., Esq.
Robert I. Rimmer, Esq.
The Reardon Law Firm, P.C.
160 Hempstead Street
New London, CT 06320

Matthew F. Medeiros, Esq.
Little, Medeiros, Kinder Bulman & Whitney, P.C.
72 Pine Street, 5th Floor
Providence, RI 02903

Ralph J. Monaco, Esq.
Patrick J. Day, Esq.
Conway & Londregan, P.C..
38 Huntington Street
P.O. Box 1351
New London, CT 06320

Edward B. O'Connell, Jr., Esq.
Waller, Smith & Palmer, P.C.
51 Eugene O'Neill Drive
P.O. Box 88
New London, CT 06320

Bruce P. Keller, Esq.
Debovoise & Plimpton
919 Third Avenue
New York, NY 10022

James T. Murphy, Esq.
Megan J. Goguen, Esq.
Hanson Curran LLP
146 Westminster Street
Providence, RI 02903-2218

Faith A. LaSalle, Esq.
Law Offices of Faith LaSalle
One Turks Head Place
76 Westminster Street, Suite 1010
Providence, RI 02903

Scott J. Tucker, Esq.
Tucker, Heifetz & Saltzman
Three School Street
Boston, MA 02108

Mark K. Ostrowski, Esq.
Jose M. Rojas, Esq.
Shipman & Goodwin, LLP
One American Row
Hartford, CT 06103-2819

Allan B. Taylor, Esq.
Day, Berry & Howard
185 Asylum Street
City Place I
Hartford, CT 06103

Marc DeSisto, Esq.
DeSisto Law
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563

Joseph V. Cavanagh, Jr., Esq.
Kristin E. Rodgers, Esq.
Blish & Cavanagh
30 Exchange Terrace
Providence, RI 02903

Edward M. Crane, Esq.
Deborah G. Solmor, Esq.
Skadden, Arps, Slate, Meagher & Flom
333 West Wacker Drive, Suite 2100
Chicago, IL 60606

Howard A. Merten, Esq.
Benjamin V. White, III, Esq.
Eric M. Sommers, Esq.
Veeter & White, Incorporated
20 Washington Place
Providence, RI 02903

Thomas C. Angelone, Esq.
Hodosh, Spinella & Angelone
One Turks Head Place
Suite 900
Providence, RI 02903

Donald J. Maroney, Esq.
146 Westminster Street
Suite 500
Providence, RI 02903

Donald J. Maroney, Esq.
James H. Reilly, Esq.
Kelly, Kelleher, Reilly & Simpson
146 Westminster Street
Providence, RI 02903

James R. Lee, Esq.
State of Rhode Island
Attorney General's Office
150 South Main Street
Providence, RI 02903

James T. Murphy, Esq.
Kelly N. Michels, Esq.
Hanson Curran LLP
146 Westminster Street
Providence, RI 02903-2218

Scott J. Tucker, Esq.
Tucker, Heifetz & Saltzman
Three School Street
Boston, MA 02108

Gerald C. DeMaria, Esq.
James A., Ruggieri, Esq.
Higgins, Cavanagh & Cooney
123 Dyer Street
Providence, RI 02903

John R. Crockett, Esq.
Susan S. Wettle, Esq.
Carl A. Henlein, Esq.
Frost Brown Todd LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202-3363

Stefanie DiMaio Larivee, Esq.
215 Broadway
Providence, RI 02903

Mark T. Nugent, Esq.
Paul V. Sullivan, Esq.
Morrison, Mahoney & Miller
One Providence Washington Plaza
6th Floor
Providence, RI 02903

Daniel P. McKiernan, Esq.
146 Westminster Street
Providence, RI 02903

Joyce A. Faraone, Esq.
400 Reservoir Avenue
Suite 3G
Providence, RI 02907

Ann S. Sheeley, Esq.
Stephen Born, Esq.
Law Offices of Donald E. Green, P.C.
2235 Washington Street
Roxbury, MA 02119

James Howe, Esq.
215 Broadway
Providence, RI 02903

Stephen E. Breggia, Esq.
Breggia, Bowen & Grande
395 Smith Street
Providence, RI 02908

Eva Mancuso, Esq.
Hamel, Waxler, Allen & Collins
387 Atwells Avenue
Providence, RI 02909

William A. Filippo, Esq.
Steven A. Minicucci, Esq.
373 Elmwood Avenue
Providence, RI 02907

Donald A. Migliori, Esq.
Ness, Motley, Loadholt, Richardson & Poole
321 South Maine Street, Suite 402
Providence, RI 02903

Scott Hubbell, Esq.
Summers Law Office
P.O. Box 306
Franklin, MA 02038-0306

Oleg Nikolyszyn, Esq.
155 South Main Street
Suite 303
Providence, RI 02903

Mark S. Mandell, Esq.
Mandell, Schwartz & Boisclair
One Park Row
Providence, RI 02903

Christopher L. Russo, Esq.
888 Reservoir Avenue
Cranston, RI 02910

Charles N. Redihan, Jr., Esq.
Kiernan, Plunkett & Redihan
91 Friendship Street
Providence, RI 02903

Mark D. Tourgee, Esq.
Timothy A. Williamson, Esq.
Inman & Tourgee
1193 Tiogue Avenue
Coventry, RI 02816

Michael A. St. Pierre, Esq.
Revens, Revens & St. Pierre, P.C.
946 Centerville Road
Warwick, RI 02886

Max Wistow, Esq.
Wistow & Barylick
61 Weybosset Street
Providence, RI 02903

C. Russell Bengtson, Esq.
Carroll, Kelly & Murphy
One Turks Head Place, Suite 400
Providence, RI 02903

Patrick T. Jones, Esq.
Cooley Manion Jones, LLP
21 Custom House Street
Boston, MA 02110

Christopher C. Fallon, Jr., Esq.
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103-3508

Donna M. Lamontagne, Esq.
Zizik, Powers, O'Connell, Spaulding &
Lamontagne, P.C.
40 Westminster Street
Suite 201
Providence, RI 02903

Grant H. Miller, Jr., Esq.
Cynthia A. Jaworski, Esq.
Law Offices of Grant H. Miller, Jr.
55 Capital Boulevard, Suite 210
Rocky Hill, CT 06067

Steven A. Minicucci, Esq.
Calvino Law Associates
373 Elmwood Avenue
Providence, RI 02907

John J. Nazzaro, Esq.
Law Offices of John J. Nazzaro, LLC
164 Hempstead Street
New London, CT 06320

Richard W. MacAdams, Esq.
MacAdams & Wieck, Inc.
101 Dyer Street
Providence, RI 02903

Thomas W. Lyons, III, Esq.
Strauss, Factor & Lopes
403 South Main Street
Providence, RI 02903

Counsel for The Clear Channel Defendants