UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LINDA RODERIQUES, et al | : | |
| | : | |
| Plaintiffs, | : | C.A. No. 04-26-L |
| | : | |
| V. | : | |
| | : | |
| AMERICAN FOAM CORPORATION et al., | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RODERIQUES, ET AL, OBJECTION TO THE MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, FILED BY THE "CLEAR CHANNEL DEFENDANTS"**

105

# TABLE OF CONTENTS


INTRODUCTION AND PROCEDURAL HISTORY .......... 1

ARGUMENT .......... 5

THE CLEAR CHANNEL DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFF ALLEGES PREDICATE FACTS THAT WOULD IMPOSE A DUTY ON THOSE DEFENDANTS .......... 5

II. THE CLEAR CHANNEL DEFENDANTS ACKNOWLEDGE THAT EVIDENCE DEMONSTRATING LEGAL OR ACTUAL CONTROL BY THEM IS RELEVANT TO THE NATURE OF THE DUTY OWED TO PLAINTIFF .......... 6

III. IT IS A LONG ESTABLISHED PRINCIPLE UNDER RHODE ISLAND LAW THAT A PARTY MAY INCUR LIABILITY UNDER CIRCUMSTANCES WHERE IT HAS A RIGHT TO CONTROL AN INSTRUMENTALITY THAT CAUSES HARM 9

IV. THE PREDICATE FACTS OF THE CLEAR CHANNEL DEFENDANTS' INVOLVEMENT WITH THE GREAT WHITE PERFORMANCE WILL DETERMINE WHETHER THOSE DEFENDANTS OWED A DUTY TO THE PLAINTIFF .......... 12

V. THE CLEAR CHANNEL DEFENDANTS ARE LIABLE FOR THE ACTIONS OF THEIR AGENTS .......... 14

CONCLUSION .......... 15

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LINDA RODERIQUES, et al | : | |
| | : | |
| Plaintiffs, | : | C.A. No. 04-26-L |
| | : | |
| V. | : | |
| | : | |
| AMERICAN FOAM CORPORATION et al., | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RODERIQUES', ET AL, OBJECTION TO THE MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, FILED BY THE "CLEAR CHANNEL DEFENDANTS"**

INTRODUCTION AND PROCEDURAL HISTORY

Plaintiffs Roderiques, et al submit this memorandum, and a motion pursuant to Fed.R.Civ.P. 56(f), in opposition to the Motion to Dismiss or, in the Alternative, for Summary Judgment filed by the "Clear Channel Defendants." (1)Specific allegations against Clear Channel are found in the Complaint at ¶¶ 1682-1693 inclusive.(2)

1 For purpose of convenience, Plaintiffs will adopt the characterization used by the defendants in their motion, affidavit and supporting pages.

2 With the advent of the agreement of all plaintiffs to file a Master Complaint, plaintiffs' counsel (including Plaintiff's counsel herein) it is Plaintiff's intention to move to amend to conform their allegations to those contained in the `Master Complaint' *(as amended)*. In the interim, counsel for the plaintiff herein and counsel for the Clear Channel Defendants have filed, stipulations substituting Clear Channel Broadcasting, Inc. as a party defendant for Clear Channel Communications, Inc. and including Capstar Radio Operating Company as a party defendant as successor in interest to WHJY, Inc. The allegations as to these defendants can be found in the Master Complaint at TI395-409 inclusive.

The essential factual allegations asserted by Plaintiff are that WHJY, a radio station broadcasting heavy metal rock music, knew that the band Great White would employ pyrotechnics before proximate audiences at its concerts. WHJY promoted, sponsored and produced the Great White concert at The Station through numerous activities. Some may be characterized as marketing efforts, such as endorsing and promoting the concert on its on-air broadcasts and authorizing a banner which invited patrons to "Party with WHJY," which banner was hung outside The Station for days prior to February 20, 2003. Other activities, however, required the direct involvement of WHJY with and control over the Great White performance, including providing interns at the venue to assist with the promotion, and by providing its employee, Mike Gonsalves, to act as the host and master of ceremonies and to introduce the band. WHJY, it is alleged, knew that Great White was using, and had openly and repeatedly used, unlicensed pyrotechnics during its concert tour in the days and weeks of prior to February 20, 2003,([3]) and minimal inquiry by WHJY would have disclosed the inherently dangerous nature of Great White's performance, which would predictably begin with the illegal ignition of unlicensed pyrotechnics before a proximate audience.([4])

The Clear Channel Defendants, by their employee and agent Mike Gonsalves, had both the authority and opportunity to stop or delay the performance over any issue relating to safety or equipment.

---

[3] See Affidavit of Jeff Hair, "Hair Aff.", confirming that in the weeks before February 20, 2003 Great White openly advertised its pyrotechnic use during the then current tour on its web site. [The original "Hair Aff." has been filed in Gray v. Derderian, and is incorporated by reference herein. A *copy* of the "Hair Aff." is appended hereto marked Exhibit A].

[4] Such violations included those in Minnesota, Minn. Stat. Ann. §624.21 et. seq.; Florida, Fla. Stat. Ann. 791.02 et. seq.; Pennsylvania, **35 Pa.** Cons. Stat. Ann §1272 et. seq.; Maine, ME. Rev. Stat. Ann. tit.8, §227A; Iowa, Iowa Code Ann § 7272; Wisconsin, Wis. Stat. Ann. §167.10; and New Jersey, N.J. Stat. Ann. §21:2-1 (see "Kansas City Star" article,Feb. 21, 2003, appended to Affidavit of Stephen E. Breggia).

[Affidavit of John Arpin, "Arpin Aff." at ¶8, the original of which has been filed contemporaneously with this Court in Gray v. Derderian, and is incorporated by reference herein. A *copy* of the "Arpin Aff." is appended hereto marked Exhibit B].

By virtue of these factual circumstances, specifically its concomitant control over the actual performance and its superior knowledge that Great White would utilize illegal pyrotechnics, WHJY breached its duty to make inquiry sufficient to discover the dangers of the band's performance and to act to prevent them.

Plaintiff alleges that Clear Channel owns, manages and controls the day-to-day affairs of WHJY, (See *Master Complaint,* 11404 et seq., Gray v. Derderian) including decisions and policies made with respect to sponsorship and promotion, such as the Great White performance on February 20, 2003. On this allegation of direct management and day-to-day control, plaintiffs charge Clear Channel with direct responsibility as principal for the actions of its agent WHJY.([5])

Defendants' dispositive motion has been advanced prior to the commencement of any formal discovery sanctioned by this Court.

Pursuant to the Superior Court's authorization, the plaintiffs were permitted to file and serve "document only" subpoenas on a variety of putative defendants,([6]) including the Clear Channel Defendants, on whom a notice to take deposition was served on July 29, 2003, requiring

[5]Nowhere in its motion, memorandum, affidavit or "Statement of Undisputed Facts" does Clear Channel dispute or suggest that it does not directly manage and control the affairs and policies of WHJY, including those policies which control sponsorship.

[6]Documents were sought from, among others, WHJY, Inc., McLaughlin & Moran, Inc., Anheuser-Busch, Inc., Manic Music Management, Inc., Derco, LLC, Strawberries, Inc., LIN Television Corporation, and CBS Broadcasting, Inc.

WHJY, Inc. to appear, with documents, on Thursday, August 14, 2003. A copy of that notice and subpoena *duces tecum,* (appended to the Affidavit of Stephen E. Breggia), demonstrates that more than 15 months ago counsel sought disclosure of documents reflecting or memorializing the nature and extent of the Clear Channel Defendants' involvement with and control over Great White promotion, their internal protocols or guidelines for such activities, their knowledge of the specific risks of the promotion, and the extent of their investigation or analysis of those risks.

That subpoena also sought, among other items, evidence disclosing agreements between the Clear Channel Defendants and any other person or entity, including the Derderians and Derco, LLC, and WHJY's co-promoters, Anheuser-Busch and McLaughlin & Moran, relative to the allocation of responsibilities and duties surrounding the sponsorship promotion and control of the Great White concert. All of these documents, as well as testimony on those issues, were understood to be uniquely within deponents' control.

Prior to the date for this document production deposition, defendants in the state court Station Fire Litigation removed all pending Actions to this Court. While it sorted out both jurisdictional issues and the multiplicity of parties and claims, this Court stayed all discovery, which stay is still in effect.

The Clear Channel Defendants' present a preemptive request to dismiss all plaintiffs' claims in all actions filed against them, or to seek summary judgment based on their unilateral "Omnibus Statement Of Undisputed Facts," without plaintiffs having had the benefit of obtaining testimony or documents which

would disclose agreements, protocols and other facts bearing on the extent of the Clear Channel Defendants' knowledge, inquiry and control, should be rejected. It is disingenuous for these defendants to have sought to quash a relevant document subpoena, successfully moved that discovery be stayed, and then to archly observe that "plaintiffs have conducted little, if any, formal discovery" (Omnibus Memorandum of Clear Channel Defendants in support of their Motions to Dismiss or, in the Alternative, for Summary Judgment, "Defendants' Memorandum," p. 30). Plaintiff submits herewith a motion pursuant to FedR.Civ,P. 56(f) seeking such discovery.

ARGUMENT

I. THE CLEAR CHANNEL DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFF ALLEGES PREDICATE FACTS THAT WOULD IMPOSE A DUTY ON THOSE DEFENDANTS

The Clear Channel Defendants' memorandum, p. 7, acknowledges that a complaint should not be dismissed for failure to state a claim unless it appears "beyond all doubt" that the plaintiffs can prove no set of facts that would entitle them to relief. See e.g. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In conducting such a review, the Court must give plaintiff the benefit of every reasonable inference to be drawn from the well-pleaded allegations of their Complaint, and those allegations must be accepted as true. See, Retail Clerks International Association, Local1625,AFL-CIO v. Schermerhorn 373 U.S. 746, 753 n.6 (1963); see also Cruz v. Beto, 405 U.S. 319, 322 (1972) (citing Conley v. Gibson, at 45-46).

Plaintiff alleges direct control by the Clear Channel Defendants, through their employee and agent Mike Gonsalves, of the Great White performance, and those allegations, alone, are sufficient,

within the detailed predicate facts plead by Plaintiff, to state a claim that the Clear Channel Defendants owed Plaintiff a duty, and breached that duty to them directly causing enormous harm. (See n. 2 supra.)

II. THE CLEAR CHANNEL DEENDANTS ACKNOWLEDGE THAT EVIDENCE DEMONSTRATING LEGAL OR ACTUAL CONTROL BY THEM IS RELEVANT TO THE NATURE OF THE DUTY OWED TO PLAINITFF

The Clear Channel Defendants claim that they owe no duty to the plaintiff. They set out, in bold face type, without specific attribution, what they assert is controlling black letter law, stating, "[o]ne who sponsors, presents, promotes, markets, advertises or otherwise becomes involved in a public event cannot be held liable for injuries sustained in connection with that event in the absence of control — either legal or actual — over something that caused the injuries,"(Defendants' Memorandum at page 15.) Defendants' motion should be denied because the Plaintiff herein alleges facts supporting the reverse of this proposition, which the Clear Channel Defendants must concede is equally true: A sponsor, presenter, promoter or person or entity otherwise involved in a public event **can** be held liable for its negligence if it has the right, either legal or actual, to exercise control over something that caused injuries.

The Complaint, and, to the extent the Court considers the Clear Channel Defendants' motion as one pursuant to Rule 56 and looks beyond the Complaint to Plaintiffs' affidavits, set forth sufficient allegations of knowledge, control and special circumstances to support their claims against the defendants. (See n. 2 supra.)

Plaintiff alleges that Clear Channel, and its employees and agents, knew of Great White's pyrotechnic use, and were extensively engaged both in the promotion and actual production of, and had control over, the Great White concert at The Station on February 20, 2003. Clear Channel's Mike Gonsalves, "the Doctor," was provided by WHJY not only to promote the event on the airways prior to the concert but also to serve as the master of ceremonies, introducer, and stage presence at the concert itself; [Affidavit of Kevin J. Beese "Geese Aft.," at ¶¶8, ¶¶9, ¶12, the original of which has been filed in Gray v. Derderian, and is incorporated by reference herein. A *copy* of the "Geese Aff." is appended hereto marked Exhibit C; and Arpin Aff. ¶¶5, ¶¶8, ¶10]; Clear Channel's employees and interns were provided to distribute merchandise and assist in the production of the event; [Beese Aff., ¶10, and Arpin Aff., ¶6] The Station's employees granted to Gonsalves the control of the stage and the timing and details of the commencement of the Great White performance [Arpin Aff. ¶8, Beese Aff. ¶12]; Gonsalves was the lastperson on, and in control of the stage, when the illegal pyrotechnics were introduced to the stage prior to the commencement of Great White's performance; Gonsalves, as Clear Channel's employee and representative, had the ability, if he chose, to delay or abort the introduction of the Great White performance. [Beese ¶12, Arpin ¶¶8].

Plaintiff does not know, but has sought to learn, what agreements and understandings existed among and between Mike Gonsalves, WHJY (Clear Channel), Anheuser-Busch, McLaughlin & Moran, the Derderians and Derco, LLC with respect to the Great White performance, the roles of the parties and the use of pyrotechnics. Michael Gonsalves died in the fire; Jeffrey and Michael Derderian, under indictment, are understandably not presently voluntarily providing testimony, and are not expected to testify about their conversations and/or any agreements with Gonsalves or others until after their criminal

case is resolved. Plaintiff has sought, but has not been able to obtain, written contracts between and among the Derderians, the Clear Channel Defendants, Anheuser-Busch, McLaughlin & Moran, nor any written confirmation of any understandings between and among them. These facts can only be established by permitting Plaintiff to obtain testimony, and documents, from Clear Channel's employees and agents, from the Derderians and other Derco, LLC employees, and from representatives of Anheuser-Busch and McLaughlin & Moran. Plaintiff suggests that without being permitted access to such information and documents, the predicate facts which resolve the crucial issue of both practical control and the right to control any aspect of the performance by the Clear Channel Defendants will be left only to the Clear Channel Defendants' conclusory and self-serving denials of such control.

Plaintiff has also sought, and seeks, to obtain those written protocols which govern the sponsorship or promotion by the Clear Channel Defendants of public events. Plaintiff believes those standards or protocols exist, and that they forbid the Clear Channel Defendants' sponsorship or promotion of illegal or hazardous public events.

Accordingly, Plaintiff asserts the existence and materiality of such Clear Channel protocols/policies as they illuminate the standards to which Clear Channel held itself and its stations. It is a settled principle of Rhode Island law that one who takes on the obligation to perform an act must do so with reasonable care, whether or not that person had an obligation to perform the act absent its voluntary assumption of that duty. Izen v. Winoker, 589 A.2d 824, 828 (1991). Plaintiff asserts that she is well within that class of persons who such public safety obligations would benefit, and that the Clear Channel Defendants

breached their own standards.([7])

## III. IT IS A LONG ESTABLISHED PRINCIPLE UNDER RHODE ISLAND LAW THAT A PARTY MAY INCUR LIABILITY UNDER CIRCUMSTANCES WHERE IT HAS A RIGHT TO CONTROL AN INSTRUMENTALITY THAT CAUSES HARM

Plaintiff's claims against the Clear Channel Defendants are based on more than mere marketing of the concert.([8]) They are founded, rather, on established principles of Rhode Island law, that one who knows of a danger, and who has, or has assumed, the practical or legal right to protect a plaintiff from that harm, and negligently fails to do so, may be liable to a plaintiff for that harm.

Defendants' attempt to distinguish away controlling Rhode Island precedent is unpersuasive. They acknowledge, but fail to meaningfully distinguish, the vitality of the Supreme Court of Rhode Island's holding in Sroka v. Halliday, 39 R.I. 119, 97 A. 965 (R.I. 1916), which imposed liability on a civic committee in Pawtucket which had been organized to produce a fireworks display. Although the vendor selected by the Committee, to whom it ceded the operational task of putting on the display, allegedly negligently performed his duties to run the fireworks show, the Supreme Court was comfortable in imposing liability on the Committee because, by accepting the charge given them by the Pawtucket City Council, they had the implied right to control the details of the fireworks display if they saw fit. Id. at 138, 97 A. at 972.

---

[7] Nowhere in the defendants' papers do they produce, or clarify the existence of, the specific agreements they entered into governing the production and promotion of the Great White concert, nor their own policies, standards or protocols applicable to such actions.

[8] See, McElheny v. Trans National Travel, Inc., 165 F. Supp. 2d 190 (D.R.I. 2001) (Lagueux, J.). In McElheny this Court, adopting the report of Magistrate Judge Martin, dismissed a complaint against a tour operator brought by a plaintiff allegedly injured by a defective chair in a hotel into which she was booked

The Clear Channel Defendants are no less responsible. Knowing of Great White's pyrotechnic use, and in control of the stage with the authority and opportunity to correct hazards and abort or delay the show in order to address them, the Clear Channel Defendants failed to act and a foreseeable tragedy occurred.

The scope of the Clear Channel Defendants' duty to the Plaintiff, and their liability, can only be measured if the Plaintiff is permitted to establish the details of the agreements between and among the Derderians, Derco, LLC, Gonsalves, WHJY, Anheuser-Busch and McLaughlin & Moran, to learn what policies and protocols applied and to, at a minimum, define the contours of Gonsalves' (and Clear Channel's) right to control the Great White performance.

---

by the defendant. As there was no control over the hotel by defendant, no duty arose. The Court also referred, however, to a different type of duty, that to inquire into the safety and reputation of the hotel:

> In the absence of special circumstances indicating that additional measures are necessary, a tour operator fulfills its obligation with respect to the safety and security of a tour participant by conducting a minimal investigation of the hotel accommodations included in its tour package. McElhenv, at 203.

Finding that the defendant's annual inspections met this standard, the Court dismissed.

The McElhenv duty not to book patrons on tours that a minimal investigation would reveal to be dangerous is directly analogous to the Clear Channel Defendants' duty not to invite patrons into The Station, with banners, beer and tee shirts, when a minimal investigation would have revealed both the hazards of the venue and of the performance as it was occurring in earlier venues on the tour and as it involved unpermitted pyrotechnic use. See, Affidavit of Stephen E. Breggia, original of which is filed in his opposition and a copy of which is enclosed, for Kansas City Star article February 21, 2003, detailing Great White's unpermitted pyrotechnic use during its tour on at least five occasions in the twenty days prior to its February 20, 2003 concert at The Station. Plaintiff is entitled to discover, factually, just what inquiry was made, and how minimal it was.

Further, Plaintiff asserts that the existence of special circumstances - the Clear Channel Defendants' knowledge of Great White's pyrotechnic use, their intimate knowledge of The Station, and Gonsalves' presence on the stage and right to control the performance — impose on the Clear Channel Defendants a greater duty than the "minimal inquiry" imposed in McElhenv, the duty to exercise due and reasonable care.

More recently, this Court in McAleer v. Smith, 860 F. Supp. 924 (D.R.I. 1994), affirmed the existence of a legal duty to plaintiffs' decedents upon the sponsor of a sailing event. The Court thoroughly examined the details of the sponsor's involvement in, and control over, the sailing event and conducted a fact-specific analysis of the nature of the sponsor's involvement in order to determine whether a duty arose out of its actions. Id. After finding that the defendant's relationship with the decedents was, factually, greater than that of a tour operator and patron, this Court found:

> Given ASTA's extensive relationship with sail trainees, this Court concludes that ASTA owed a duty to sail trainees to exercise due and reasonable care in choosing and approving vessels for sail training to assure that the sail trainees were placed aboard seaworthy, properly manned and safe vessels. Additionally, ASTA owed a duty to exercise reasonable care in the conduct of the Tall Ships Race so as not to increase the risks inherent in sail training. McAleer, at 931.

Such factual details must be adduced here to permit a similar analysis. What the Clear Channel Defendants knew, what obligations they voluntarily assumed and what they could have done must be established by discovery to determine their duty to Plaintiff. Unlike McAleer, which was determined after a bench trial, this case, at the motion to dismiss stage, is not ripe for such determination.

How far that duty extends may be measured by the special circumstances of the relationship, including the Clear Channel Defendants' actual knowledge that Great White utilized pyrotechnics before a proximate audience, that the venue was over-crowded, and that the audience at 11:00 p.m. was to some degree impaired by alcohol. Such circumstances, with Gonsalves in control of the stage and in control of the commencement of Great White's performance, imposed a duty on the Clear Channel Defendants to do more than just watch.

Following the teaching of both Sroka and McAleer, Plaintiff suggests that they, at a minimum, should be entitled to discover the factual details of the Clear Channel Defendants' involvement with, and control over the Great White performance, and to learn the details of the agreements and contracts between Clear Channel and other defendants in this action, and to learn the Clear Channel Defendants' own internal standards and protocols.

IV. THE PREDICATE FACTS OF THE CLEAR CHANNEL DEFENDANTS' INVOLVEMENT WITH THE GREAT WHITE PERFORMANCE WILL DETERMINE WHETHER THOSE DEFENDANTS OWED A DUTY TO THE PLAINTIFF

The determination of whether or not the Clear Channel Defendants owed a duty to the plaintiffs is both related to and measured by the foreseeable potential risk. Liu v. Striuli, 36 F. Supp. 2d 452 (D.R.I. 1999) (Lagueux, C.J.). "Where the risk of injury to a party is reasonably foreseeable, the law will impose a duty upon the defendant to take reasonable steps to avoid that injury; in short, the potential risk is the measuring stick for the scope of the duty." Liu, at 466-467; see also, Volpe v. Gallagher, 821 A.2d 699, 705 (R.I. 2003). Plaintiff acknowledges that the existence of a duty is a question of law for the court; that determination, however, often, as here, depends on the resolution of predicate facts, and it is exclusively the function of the jury to determine the existence of those predicate facts. "[T]he Court should not arrogate to itself the function of determining such facts under the guise of deciding what legal duty (if any) is owed to the plaintiff...". Kuzniar v. Keach, 709 A.2d 1050, 1056 (R.I. 1998).

Recently, the Court in Carroll v. Yeaw, 850 A.2d 90, 93 (R.I. 2004), reiterated the teachings of Kuzniar and repeated the five factor analysis a court should apply in determining the existence of a duty:

1. Foreseeability of harm to the plaintiff;
2. Degree of certainty that plaintiff suffered an injury;
3. The closeness of connection between defendants' conduct and the injury suffered;
4. Policy of preventing future harm; and
5. The extent of the burden to defendant and consequences to the community for the imposition of duty.

Plaintiffs' allegations overwhelmingly satisfy the test of these factors:

1. *Foreseeability of harm was direct, and great.* Plaintiff has alleged that the Clear Channel Defendants were aware of Great White's use of pyrotechnics before this proximate audience, were aware of the dense, overcrowded conditions of The Station just prior to the Great White performance, aware of the potential impairment of many of the patrons as a result of alcohol consumption, and expressly aware of all the physical conditions at The Station, given the Clear Channel Defendants' actual presence at and involvement in that performance.

The Clear Channel Defendants had a direct, not remote, connection to the disaster and, despite the fact that it was a Great White and not a Clear Channel Defendant employee who ignited the illegal pyrotechnics, the Clear Channel Defendants' actions and failures to act were a concurrent proximate cause of the injuries. Further, the determination of proximate causation is a question of fact for the jury. Splendorio v. Bilray Demolition Co., Inc., 682 A.2d 461 (R.I. 1996). See also, Travelers Insurance Company v. Priority Business Forms, Inc., 11 F. Supp. 2d 194, 199 (D.R.I. 1998):

Determinations of foreseeability, and specifically of whether a plaintiff's injury was proximately caused by a defendant's negligent acts, or instead by the unforeseeable, intervening act of a responsible third person, are ordinarily issues of fact, and are therefore usually not determined by summary judgment.

2. *There is no uncertainty that Plaintiffs were injured.* The Plaintiffs suffered serious, physical and mental pain.

3. *There is a close, and intimate, connection between the Clear Channel Defendants' conduct and the injury suffered. As* argued above, at point 1, the actions and inactions of the Clear Channel Defendants were a proximate cause of the harm to Plaintiff, and questions of foreseeability and superseding cause are reserved for the jury.

4. *Imposing liability on the Clear Channel Defendants is consistent with Rhode Island's longstanding policy of imposing liability on a wrongdoer who, when in control of something that causes injuries, either fails to act or does so negligently.* Reiteration of that basic principle here, in the imposition of liability on the Clear Channel Defendants, will have the salutary benefit of reminding those in control of such events of their duties to those who might be injured by their inaction or carelessness.

5. *The burden to the Clear Channel Defendants from imposition of liability in these circumstances is no greater than the burden that currently exists under established Rhode Island law.* Simply stated, those who have at least concomitant control over something that has the potential to cause harm, and in this case catastrophic harm, assume the burden of acting in reasonable manner. Conversely, the consequences to the community for the imposition of such a duty to exercise care are positive, and can be predicted to reduce injuries and losses, and in this case, would have prevented substantial harm.

## V THE CLEAR CHANNEL DEFENDANTS ARE LIABLE FOR THE ACTIONS OF THEIR AGENTS

The Doctrine of Respondeat Superior holds a principal liable for the torts of his or her agents that are committed in the course of their employment or within the scope of their authority. Plainitff has asserted that Michael Gonsalves was acting for the Clear Channel Defendants, and she should be permitted to discover additional relevant facts that bear upon the involvement and relationship between the Clear Channel Defendants were acting as the agents of other defendants, such as Anheuser-Busch

CONCLUSION

For the reasons set forth above, the Motion of the "Clear Channel Defendants" to Dismiss or, in the Alternative, for Summary Judgment should be denied.

Respectfully submitted,
Plaintiffs, Linda Roderiques, et al
By Their Attorneys,
BRIAN CUNHA & ASSOCIATES, P.C.

Brian R. Cunha, Esq., R.I.#4074
Karen A. Alegria, Esq., R.I.#6562
311 Pine Street
Fall River, MA 02720
Tel: (508) 675-9500
Fax: (508) 679-6360
*brian@briancunha.com*
*karen@briancunha.com*

# EXHIBIT A

# AFFIDAVIT OF JEFFREY L. HAIR

**The deponent first being duly sworn, deposes and states as follows:**

1. My name is Jeffrey L. Hair and I am a resident of Kent, Ohio.

2. I am a sound engineer and was the teacher and mentor of Robert Rager who was the sound engineer on the Great White tour preceding the fire of February 20, 2003. While Robert was away, I wanted to check in and see what was going on with the tour and, in order to do so, I accessed the Great White web site on several occasions prior to the fire.

3. Within the period of two to three weeks prior to the fire, on the home page of the web site, photographs of Great White on tour were prominently displayed clearly showing pyrotechnics going off as part of their performance.

4. Any person with internet access could have accessed Great White's web site in the weeks before the fire and would have seen the pyrotechnic display as a part of Great White's act which pyrotechnic display they were featuring; and not in any way concealing.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 21 DAY OF NOVEMBER, 2004.

Jeffrey L. Hair

# EXHIBIT B

# AFFIDAVIT OF JOHN ARPIN

The deponent first being duly sworn, deposes and states as follows:

1. My name is John Arpin and I live in Coventry, Rhode Island.

2. At the time of the fire at The Station on February 20, 2003, I was working at the Shell Post Road Food Mart for the Derderians and occasionally helped out and worked at The Station.

3. I was working at The Station on the night of the fire. I first worked at the front door until about 8:30 p.m., and then until 10:00 p.m., I worked in the kitchen. From 10:00 p.m. until the time of the fire, I acted as general security, walking around and checking out the crowd, the bathrooms and other areas.

4. Prior to the Great White performance, I was standing with friends to stage left.

5. After the second band finishes, the Doctor, Mike Gonsalves, of WHJY, took over the stage until the time of the Great White performance.

6. Mike Gonsalves took the microphone and tried to charge up the crowd, and, with the help of some other WHJY people, gave out tee shirts, hats and other promotional materials to the crowd.

7. During the time betweed the end of the second band and the Great White performance, the lights were lowered. Prior to the dimming of lights, there were no pyrotechnics on the stage. Prior to the fire, I did not know that Great White would us pyrotechnics.

8. From a time shortly after the conclusion of the second band's performance forward, including the time period when the lights dimmed, Mike Gonsalves had control of the stage, and the timing of the Great White performance. While Jeff Derderian or other managers at The Station could also have come on the stage or given orders, it was understood that Gonsalves, as WHJY's master of ceremonies was now running the performance. Gonsalves had the control, authority and ability to stop or delay the performance if there was any issue relating to safety or equipment.

9. While the lights were dimmed, I observed Dan Biechle on the stage. Biechle appeared to be holding wires and caused a large spark, setting up what I believed to be a smoke machine. This occurred within a few feet of Gonsalves, who was on the stage.

10. **When the lights went up and after the pyrotechnics began, I concluded that the pyrotechnics had been placed on stage by Bichele during the darkness while Gonsalves was present on stage. Gonsalves, after introducing Great White, walked off the stage past Bichele, and would have to have seen the pyrotechnics and the detonator in Biechele's hand.**

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 17th DAY OF November 2004.

John R Arpin
John Arpin

Subscribed and sworn to before me this 17th day of November 2004

Notary Public
My commission expires: 6-30-06

# EXHIBIT C

**AFFIDAVIT OF KEVIN J. BEESE**

The deponent first being duly sworn, deposes and states as follows:

1. My name is Kevin J. Beese and, as of February 20, 2003, I was the manager of The Station in West Warwick, Rhode Island.

2. I had worked at The Station since approximately 1997 and was a manager of the club since some time in the year 2000.

3. I was working at The Station on the night of the fire.

4. I was responsible for setting up the club for the Great White performance.

5. I did not know that Great White intended to use pyrotechnic displays. I did not see any pyrotechnics brought into the club before the performance.

6. I knew that WHJY and Budweiser were co-sponsors of the Great White concert. I did not know any details of their agreement with each other or their agreements with Jeff or Mike Dederian.

7. I do not know whether it was Jeff or Mike who negotiated the contract with the band, WHJY and Budweiser.

8. I knew that Mike Gonsalves, "the Doctor", who was very friendly with Jeffrey Dederian would be present on behalf of WHJY and would be the master of ceremonies for the main show.

9. After the second band of the evening finished, it was time for the main performance and Mike Gonsalves took over at that point.

10. Gonsalves took the stage and, in addition to urging the crowd to come forward and announcing that Great White was going to be taking the stage, he, and the other employees I believe of WHJY, threw or gave out "swag" to the crowd including T-shirts and hats. From this point forward, Mike Gonsalves was the master of ceremonies and was in charge of the performance.

11. While Mike Gonsalves was on the stage, the lights were lowered. Prior to the lights being lowered, there were no pyrotechnics on the stage. When the lights when up, the pyrotechnics began.

12. Throughout this period of time, and until Great White actually began their performance, Mike Gonsalves shared control of the stage performance and could have delayed the performance if he had any questions or concerns, could have questioned the placement of the pyrotechnics on the stage and was

in the best position to notice what was going on and make any changes if he had concerns about it.

13. After Mike Gonsalves started the Great White performance, I immediately noticed the pyrotechnics going off and was startled by them. I saw flames before I actually saw the sparks from where I was tending bar at the front of the club.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 18th DAY OF December, 2004.

Kevin J. Beese

Kevin J. Beese

Subscribed and sworn to before me this 8th day of December, 2004

Notary Public

My commission expires: 6-30-06

**CERTIFICATION OF SERVICE**

I hereby certify that on the 7th day of December, 2004 a true copy of the within was e-mailed to:

James A. Ruggieri, Esq.
Gerald C. DeMaria, Esq.
Higgins, Cavanagh & Cooney
123 Dyer Street
Providence, RI 02903

Mark T. Renolds, Esq.
Anthony DeMarco, Esq.
Reynolds, DeMarco, & Boland, Ltd.
170 Westminster Street, Suite 200
Providence, RI 02903

Christopher C. Fallon, Jr., Esq.
Cozen O'Connoer
1900 Market Street
Philidelphia, PA 19103-3508

Marc DeSisto, Esq.
DiSisto Law Office
211 Angell Street, P.O. Box 2563
Providence, RI 02903-2563

James R. Lee, Esq.
Department of Attorney General
150 South Main Street
Providence, RI 02903

Andrew J. Trevelise Esq.
Reed Smith LLP
2500 One Liberty Place
Philadelphia, PA 19103-7301

W. Thomas McGough, Jr., Esq.
James J. Restivo, Esq.
Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA 15219

Fred A. Kelly, Jr., Esq.
Randall Sousa, Esq.
Nixon Peabody, LLP
One Citizens Plaza
Providence, RI 02903

Edward T. Hinchey, Esq.
Sloane and Walsh LLP
Three Center Plaza, 8th Floor
Boston, MA 02108

Howard A. Merten, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

William P. Robinson, III, Esq.
Stephen M.Prignano, Esq.
Stephen J. MacGillvray, Esq.
Edward & Angell, LLP
2800 Financial Plaza
Providence, RI 02903

Carl A. Henlein, Esq.
John R. Crocket, III, Esq.
Susan S. Wettle, Esq.
Frost Brown Todd
400 West Market Street, 32nd Floor
Louisville, KY 40202-3363

James H. Reilly, Esq.
Donald Maroney, Esq.
Kelly, Kelleher, Reilly & Simpson
146 Westminster Street, Suite 500
Providence, RI 02903

Thomas C. Angelone, Esq.
Hodosh, Spinella & Angelone
One Turks Head Place, Suite 1050
Providence, RI 02903

James T. Murphy, Esq.
Kelly N. Michels, Esq.
Thomas Bender, Esq.
Hanson Curran LLP
146 Westminster Street
Providence, RI 02903

Donna M. Lamontagne, Esq.
Steven Hayes, Esq.
Zizik, Powers, O'Connell
Spaulding, Lamontagne
40 Westminster Street
Providence, RI 02903

Stephen E. Breggia, Esq.
BREGGIA ABBOTT BOWEN & GRANDE
395 Smith Street
Providence, RI 02908

Faith A. LaSalle, Esq.
One Turks Head Place
76 Westminster Street, Suite 1010
Providence, RI 02903

Scott J. Tucker, Esq.
TUCKER HEIFETZ & SALTZMAN, LLP
Three School Street
Boston, MA 02108

Edward M. Crane, Esq.
Deborah Solmor, Esq.
Skadden, Arps. Slate, Meagher & Flom
333 West Wacker Drive
Chicago, IL 60606

James H. Reilly, Esq.
Donald Maroney, Esq.
Kelly, Kelleher, Reilly & Simpson
146 Westminster Street, Suite 500
Providence, RI 02903

Christopher C. Fallen Jr. Esq.
Cozen & O'Connor
1900 Market Street
Philadelphia, PA 19103

Curtis R. Diedrich, Esq.
SLOANE AND WALSH LLP
127 Dorrance Street
Providence, RI 02903

Karen A. Alegria, Esquire